EMPIRE POWER COMPANY, AND GEORGE CLARK, PETITIONER-APPELLANT v. N. C. DEPARTMENT OF ENVIRONMENT, HEALTH AND NATURAL RESOURCES, DIVISION OF ENVIRONMENTAL MANAGEMENT, RESPONDENT-APPELLEE, AND DUKE POWER COMPANY, INTERVENOR-RESPONDENT-APPELLEE

No. 570PA93

(Filed 9 September 1994)

1. **Administrative Law and Procedure § 30 (NCI4th)— NCAPA—dispute with agency—person aggrieved—right to administrative hearing**

   The North Carolina Administrative Procedures Act (NCAPA) confers upon any "person aggrieved" the right to commence an administrative hearing to resolve a dispute with an agency involving the person's rights, duties, or privileges. To the extent that language in *Batten v. N.C. Dept. of Correction*, 326 N.C. 338 (1990), reiterated in *Harding v. Dept. of Correction*, 334 N.C. 414 (1993), suggests otherwise, it is disapproved. To the extent that *Citizens for Clean Industry v. Lofton*, 109 N.C. App. 229 (1993) may be viewed as inconsistent herewith, it is also disapproved.

   **Am Jur 2d, Administrative Law §§ 340-375.**

2. **Administrative Law and Procedure § 30 (NCI4th); Environmental Protection, Regulation, and Conservation § 63 (NCI4th)— pollution control permit—third party's right to administrative hearing**

   The administrative hearing provisions of the NCAPA apply to respondent DEHNR and to the pollution control permit proceeding where neither the agency nor the proceeding is expressly exempted from the NCAPA. Thus, under the NCAPA, N.C.G.S. § 150B-23, the third party petitioner is entitled to an administrative hearing to resolve a dispute involving his rights, duties, or privileges unless (1) he is not a "person aggrieved" by the permitting decision of the DEHNR, or (2) the organic statute, specifically N.C.G.S. § 143-215.108(e), amends, repeals or makes an exception to the NCAPA so as to exclude him from those expressly entitled to appeal thereunder.

   **Am Jur 2d, Administrative Law §§ 340-375; Pollution Control § 64.**

   **Validity of state and local air pollution administrative rules. 74 ALR4th 566.**

3. **Administrative Law and Procedure § 55 (NCI4th); Environmental Protection, Regulation, and Conservation § 63 (NCI4th)— NCAPA—air quality permit—person aggrieved**

Petitioner is a "person aggrieved" as defined by the NCAPA within the meaning of the Air Pollution Control Act where he alleged (1) that DEHNR issued an air quality permit to respondent power company for sixteen combustion turbine electric generating units in violation of its statutory and regulatory duties to act on all permit applications so as to effectuate a legislative policy of reducing existing air pollution and preventing increased air pollution, to reduce levels of ozone pollution in the Mecklenburg County area, to assess fully the impact of emissions of air pollutants from the generating units on levels of ozone pollution in Mecklenburg County, to assess fully the impact of sulfur dioxide emissions from the units, to require air pollution control technology adequate to control the emission of harmful pollutants from the units, to require the power company to cause air quality offsets, and to address comments filed by petitioner and other members of the public, and (2) that, as the owner of property immediately adjacent to and downwind of the site of the proposed generating units, he will suffer from the adverse environmental consequences of pollutants from the generating units.

**Am Jur 2d, Administrative Law §§ 575, 576; Pollution Control § 64.**

4. **Administrative Law and Procedure § 30 (NCI4th); Environmental Protection, Regulation, and Conservation § 63 (NCI4th)— air quality permit—third party—right to administrative hearing by OAH**

The air pollution control administrative review provisions set forth in N.C.G.S. § 143-215.108(e) do not by implication amend, repeal, or make an exception to the NCAPA so as to exclude the third party petitioner from those entitled to an administrative hearing thereunder, and petitioner is entitled to commence an administrative hearing in the OAH to determine his right under the Air Pollution Control Act to have DEHNR issue or deny air quality permits to respondent power company in accordance therewith. While § 143-215.108(e) makes no express provision for an administrative appeal by aggrieved parties other then the permittee or permit applicant, it does not expressly prohibit such an appeal, and the intent of the language of the statute is that any permittee or permit applicant who fails to timely appeal from the

decision of the Environmental Management Commission has waived any right to administrative and judicial review of that decision.

**Am Jur 2d, Administrative Law §§ 340-375; Pollution Control § 64.**

5. **Environmental Protection, Regulation, and Conservation § 63 (NCI4th)— air quality permits—appeal by third party to OAH—technical expertise—redundancy**

There was no merit to respondents' contention that a third party should have no right to appeal to the OAH from the decision of the DEHNR to grant an air pollution control permit to a power company because DEHNR's review of applications for such permits is detailed, comprehensive, and highly technical, the permitting decision is properly made by technical experts, and an evidentiary hearing in the OAH would be redundant.

**Am Jur 2d, Pollution Control § 64.**

On discretionary review pursuant to N.C.G.S. § 7A-31 of a decision of the Court of Appeals, 112 N.C. App. 566, 436 S.E.2d 594 (1993), reversing an order entered by Barnette, J., in Superior Court, Wake County, on 22 September 1992, granting petitioner Clark's motion to dismiss respondents' Petition for Writ of Certiorari to review the order entered by Gray, Administrative Law J., denying their motions to dismiss petitioners' petitions for a contested case hearing for lack of subject matter jurisdiction. Heard in the Supreme Court 13 May 1994.

*Patterson, Harkavy & Lawrence, by Donnell Van Noppen III, for petitioner-appellant George Clark.*

*Michael F. Easley, Attorney General, by James Holloway, Associate Attorney General, for respondent-appellee Department of Environment, Health and Natural Resources, Division of Environmental Management.*

*William L. Porter, Deputy General Counsel, and Garry S. Rice, Senior Attorney; and Womble Carlyle Sandridge & Rice, P.L.L.C., by Yvonne C. Bailey and Karen Estelle Carey, for intervenor-respondent-appellee Duke Power Company.*

*John D. Runkle, General Counsel, for Conservation Council of North Carolina, amicus curiae.*

*Ward and Smith, P.A., by I. Clark Wright, Jr., for Smithfield Packing Company, Inc., amicus curiae.*

WHICHARD, Justice.

The dispositive question is whether petitioner George Clark is entitled under the North Carolina Administrative Procedures Act, N.C.G.S. § 150B-1 to -53 (1991), and the Air Pollution Control Act, N.C.G.S. § 143-215.105 to -215.114C (1993), to appeal to the Office of Administrative Hearings from the decision of the Department of Environmental Management, to grant an air pollution control permit to Duke Power Company. We hold that he is, and we thus reverse the Court of Appeals.

I.

On 4 September 1991 respondent Department of Environment, Health and Natural Resources, Division of Environmental Management ("DEHNR"), gave public notice that it had awarded a draft air quality permit to intervenor-respondent Duke Power Company ("Duke Power") for the construction and operation of sixteen combustion turbine electric generating units at the Lincoln Combustion Turbine Station ("LCTS") in Lincoln County, North Carolina. Petitioner Empire Power Company ("Empire Power") submitted written comments opposing finalization of the draft permit. Petitioner George Clark ("Clark"), who lives with his family on property immediately adjacent to the proposed LCTS, submitted written comments and spoke at a public hearing, also opposing finalization of the draft permit. On 20 December 1991 DEHNR finalized the draft permit, issuing Permit No. 7171 to Duke Power for the LCTS.

On 10 January 1992 Empire Power filed a petition for a contested case hearing with the Office of Administrative Hearings ("OAH"), alleging that DEHNR had issued a final permit to Duke Power without addressing the comments filed with the State by Empire Power, without complying with federal and state law or rules in that it had failed to properly implement certain review requirements, and without requiring an environmental impact statement as required by state law. On 21 January 1992 Clark also filed a petition for a contested case hearing with the OAH, alleging that DEHNR had issued the permit in violation of its statutory duty to act on all permit applications "so as

to effectuate the [legislative] purpose . . . by reducing existing air pollution and preventing, so far as reasonably possible, any increased pollution of the air from any additional or enlarged sources," N.C.G.S. § 143-215.108(b) (1993); to reduce levels of ozone pollution in Mecklenburg County; to assess fully the impact of emissions of air pollutants from the LCTS on levels of ozone pollution, and, in particular, the impact of sulfur dioxide emissions from the LCTS; to require air pollution control technology adequate to control the emission of potentially harmful pollutants from the LCTS; to require Duke Power to cause air quality offsets; and to adequately address comments filed by Clark and other members of the public during the public comment period.

The OAH consolidated the contested cases for hearing and allowed Duke Power to intervene therein. Both DEHNR and Duke Power filed motions to dismiss the contested cases in the OAH for lack of subject matter jurisdiction. On 13 August 1992 the Administrative Law Judge assigned to the case found that the OAH had subject matter jurisdiction, and accordingly denied respondents' motions to dismiss.

On 18 August 1992 respondents DEHNR and Duke Power filed a Petition for Writ of Certiorari in the Superior Court, Wake County, to review that order. On 18 August 1992 the court allowed the Petition for Writ of Certiorari *ex parte*, stayed the contested case proceedings before the OAH, and set the case for hearing. On 8 September 1992 Clark filed a motion to dismiss respondents' Petition for Writ of Certiorari. Finding that OAH has jurisdiction over petitions for review of grants of air pollution control permits by parties other than permittees or permit applicants, the court, on 22 September 1992, allowed Clark's motion to dismiss the judicial proceeding, and remanded the case to the OAH.

DEHNR and Duke Power appealed the dismissal of their Petition for Writ of Certiorari to the Court of Appeals, and, as noted, the Court of Appeals reversed the trial court's order. It held that third-party petitioners may not seek a contested case hearing to challenge DEHNR's issuance of an air pollution control permit. *Empire Power Co. and Clark v. N.C. Dept. of E.H.N.R.*, 112 N.C. App. 566, 570, 436 S.E.2d 594, 597 (1993). It reasoned that the language of the organic statute, N.C.G.S. § 143-215.108(e), provided only the permit applicant or permittee the right to commence a contested case hearing, notwithstanding the language of the North Car-

olina Administrative Procedure Act ("NCAPA"), N.C.G.S. Ch. 150B (1991). *Id.* Relying on *Batten v. N.C. Dept. of Correction*, 326 N.C. 338, 342-43, 389 S.E.2d 35, 38 (1990), the court reasoned that "the [NC]APA only 'describe[s] the procedures' for OAH review in the event the North Carolina General Assembly [in the organic statute] vests a party with the right to administrative review, such as a contested case hearing." *Empire and Clark*, 112 N.C. App. at 570, 436 S.E.2d at 597. The court also held that third-party petitioners are nonetheless entitled to judicial review of DEHNR's decision to issue an air pollution control permit to Duke Power under Article 4 of the NCAPA. *Id.* at 573, 436 S.E.2d at 599. We allowed Clark's petition for discretionary review on 3 March 1994.

On this appeal, Clark contends that respondents' reliance upon *Batten* is misplaced, and that he is an aggrieved person entitled to an administrative hearing under the NCAPA to appeal from the decision of DEHNR to issue a permit to Duke Power to construct the LCTS. For the following reasons, we conclude that respondents' reliance upon *Batten* is misplaced, and that construing the relevant statutes *in pari materia*, as we must, Clark is an "aggrieved person" entitled to appeal the decision to the OAH. Accordingly, we reverse the decision of the Court of Appeals, and remand the case to the Superior Court, Wake County, for reinstatement of its order.

## II.

We stated in *Batten*:

> The jurisdiction of the OAH over the appeals of state employee grievances derives not from Chapter 150B, but from Chapter 126. *The administrative hearing provisions of Article 3, Chapter 150B, do not establish the right of a person "aggrieved" by agency action to OAH review of that action, but only describe the procedures for such review.*

*Batten*, 326 N.C. at 342-43, 389 S.E.2d at 38 (emphasis added). Relying on this language, respondents contend that the NCAPA cannot confer upon petitioners the right to an administrative hearing in the OAH. Rather, they contend, the right to an administrative hearing must be expressly set forth in the organic statute, N.C.G.S. ch. 143, art. 21B ("Air Pollution Control").

*Batten* involved the grievance of an employee of the Department of Correction, an agency expressly exempted from application of the administrative hearing provisions of the NCAPA. *See* N.C.G.S.

§ 150B-1(e)(4) (1987, superseded). While the excerpted language—out of context—can be interpreted as respondents propose, the language of the statute as this Court interpreted and applied it prior to *Batten* does not sustain respondents' proposed interpretation. We now clarify that the excerpted language applies only in the *Batten* context, *i.e.*, of appeals of grievances of employees of agencies expressly exempted from the NCAPA.

When we decided *Batten*, the NCAPA read, in pertinent part:

## § 150B-1. Policy and scope.

(a) The policy of the State is that the three powers of government, legislative, executive, and judicial, are, and should remain, separate. The intent of this Chapter is to prevent the commingling of those powers in any administrative agency and to ensure that the functions of rule making, investigation, advocacy, and adjudication are not all performed by the same person in the administrative process.

(b) The purpose of this Chapter is to establish as nearly as possible a uniform system of administrative rule making and adjudicatory procedures for State agencies.

(c) This Chapter shall apply to every agency, as defined in G.S. 150B-2(1), except to the extent and in the particulars that any statute, including subsection (d) of this section, makes specific provisions to the contrary.

(d) (1) The following are specifically exempted from the provisions of this Chapter:

    a.     The Administrative Rules Review Commission;

    b.     The Employment Security Commission;

    c.     The Industrial Commission;

    d.     The Occupational Safety and Health Review Board in all actions that do not involve agricultural employers; and

    e.     The Utilities Commission.

    (2)    The North Carolina National Guard is exempt from the provisions of this Chapter in exercising its court-martial jurisdiction.

(3)     The Department of Human Resources is exempt from this Chapter in exercising its authority over the Camp Butner reservation granted in Article 6 of Chapter 122C of the General Statutes. The Department of Human Resources is also exempt from Article 3 of this Chapter in complying with the procedural safeguards mandated by . . . Section 680 of Part H of P.L. 99-457 as amended (Education of the Handicapped Act Amendments of 1986).

(4)     The Department of Correction is exempt from the provisions of this Chapter, except for Article 5 of this Chapter and G.S. 150B-13 which shall apply.

(5)     Articles 2 and 3 of this Chapter shall not apply to the Department of Revenue.

(6)     Except as provided in Chapter 136 of the General Statutes, Articles 2 and 3 of this Chapter do not apply to the Department of Transportation.

(7)     Article 4 of this Chapter, governing judicial review of final administrative decisions, shall apply to The University of North Carolina and its constituent or affiliated boards, agencies, and institutions, but The University of North Carolina and its constituent or affiliated boards, agencies, and institutions are specifically exempted from the remaining provisions of this Chapter.

(8)     Article 4 of this Chapter shall not apply to the State Banking Commission, the Commissioner of Banks, the Savings Institutions Division of the Department of Economic and Community Development, and the Credit Union Division of the Department of Economic and Community Development.

(9)     Article 3 of this Chapter shall not apply to agencies governed by the provisions of Article 3A of this Chapter, as set out in G.S. 150B-38(a).

(10)    Articles 3 and 3A of this Chapter shall not apply to the Governor's Waste Management Board in administering the provisions of G.S. 104E-6.2 and G.S. 130A-293.

(11)    Article 2 of this Chapter shall not apply to the North Carolina Low-Level Radioactive Waste Management

Authority in administering the provisions of G.S. 104G-10 and G.S. 104G-11. Articles 3 and 3A of this Chapter shall not apply to the North Carolina Low-Level Radioactive Waste Management Authority in administering the provisions of G.S. 104G-9, 104G-10, and 104G-11.

(12) Article 2 of this Chapter shall not apply to the North Carolina Hazardous Waste Management Commission in administering the provisions of G.S. 130B-13 and G.S. 130B-14. Articles 3 and 3A of this Chapter shall not apply to the North Carolina Hazardous Waste Management Commission in administering the provisions of G.S. 130B-11, 130B-13 and 130B-14.

(13) Article 3 and G.S. 150B-51(a) of this Chapter shall not apply to hearings required pursuant to the Rehabilitation Act of 1973, (Public Law 93-122), as amended and federal regulations promulgated thereunder.

N.C.G.S. § 150B-1 (1987 & Supp. 1989, superseded). One year prior to *Batten*, we had interpreted this statute in *Vass v. Bd. of Trustees of State Employees' Medical Plan*, 324 N.C. 402, 379 S.E.2d 26 (1989). The plaintiff there was a State employee whose health was insured through the Teachers' and State Employees' Comprehensive Major Medical Plan ("Medical Plan"). He filed a claim under the Medical Plan to recover his costs for surgery, but his claim was denied by the agency and, upon appeal, by the supervisory Board of Trustees of the Medical Plan ("Board"). *Vass*, 324 N.C. at 403-04, 379 S.E.2d at 27. He then instituted an action for breach of contract against the Board. The trial court granted summary judgment in favor of the Board; the Court of Appeals remanded the case to the trial court to be dismissed for lack of subject matter jurisdiction, concluding that the Board is an administrative agency covered by the NCAPA and that plaintiff had failed to exhaust administrative remedies provided by the NCAPA—*i.e.*, plaintiff had failed to file a petition for a contested case hearing in the OAH and therefore was not entitled to judicial review of the administrative decision. *Id.* at 404-05, 379 S.E.2d at 27-28.

On discretionary review, we concluded that because the Board is an "agency" as that term is defined under the NCAPA, the NCAPA applies to the Board except to the extent and in the particulars that any statute makes specific provisions to the contrary. The Board had

contended that the organic statute creating the Medical Plan made such specific exemptions:

> If, after exhaustion of internal appeal handling as outlined in the contract with the Claims Processor any person is aggrieved, the Claims Processor shall bring the matter to the attention of the Executive Administrator and Board of Trustees, which may make a binding decision on the matter in accordance with procedures established by the Executive Administrator and Board of Trustees.

N.C.G.S. § 135-39.7 (1988) ("Administrative Review"). The Board, like respondents here, argued that the language of the organic statute exempted it from application of the NCAPA because the language revealed the General Assembly's intent that any review of the Board's decisions be limited to judicial review. *Id.* at 406-07, 379 S.E.2d at 28-29. We held that plaintiff was entitled under the NCAPA to an administrative hearing to have his rights under the Medical Plan determined, stating:

> It is clear that the General Assembly intended only those agencies it expressly and unequivocally exempted from the provisions of the Administrative Procedure Act be excused in any way from the Act's requirements and, even in those instances, that the exemption apply only to the extent specified by the General Assembly. Therefore, we conclude that N.C.G.S. § 135-39.7 is not a statute which makes "specific provisions to the contrary" as that phrase is used in . . . N.C.G.S. § 150B-1(c). The language in N.C.G.S. § 135-39.7 . . . is not an express and unequivocal exemption of the Board from the requirements of the Administrative Procedure Act. . . .
>
> . . . [T]he General Assembly has shown itself to be quite capable of specifically and expressly naming the particular agencies to be exempt from the provisions of the Act and has clearly specified the extent of each such exemption. *E.g.*, N.C.G.S. § 150B-1(d) (1987) (totally exempting certain named agencies by stating that the Act "shall not apply" to them, and partially exempting certain other named agencies by specifying the extent to which the Act shall apply or the agency shall be exempt) . . . . Applying the maxim *inclusio unius est exclusio alterius,* we conclude that the Board's decisions are subject to administrative review under the Act, since the Board has never been specifically exempted by any statute from the Act's requirements. Had the

General Assembly intended that the defendant-appellant Board be excluded from the requirements of the Act, we must assume that it would have inserted a specific provision in some statute expressly stating this intent. As the General Assembly has not done so, we will not infer any such intent on its part.

*Id.* at 407-08, 379 S.E.2d at 29 (emphasis added) (citations omitted).

Respondents contend that we made it clear in *Batten* that the administrative hearing provisions of the NCAPA "do not establish the right of a person 'aggrieved' by agency action to administrative review of that action by the OAH, but only describe procedures for such review." That interpretation is contrary to the language of the statute as interpreted and applied in *Vass.* Under that interpretation, the plaintiff there would not have been entitled to an administrative hearing under the NCAPA to determine his rights under the Medical Plan because the organic statute did not set forth his right thereto. In *Batten* we neither mentioned nor overruled the interpretation of the administrative hearing provisions applied in *Vass. Batten* involved the appeal of a grievance of an employee of an agency expressly exempted from the administrative hearing provisions of the NCAPA; thus, under the plain meaning of the NCAPA, that employee can be entitled to an administrative hearing to appeal his grievance to the OAH only by virtue of another statute. For these reasons, we reject respondents' interpretation of the language excerpted from *Batten.*

Subsequent amendments to the NCAPA bolster our interpretation of the statute. *See Burgess v. Your House of Raleigh,* 326 N.C. 205, 216, 388 S.E.2d 134, 141 (1990) ("Courts may use subsequent enactments or amendments as an aid in arriving at the correct meaning of the prior statute by utilizing the natural inferences arising out of the legislative history as it continues to evolve."). Effective 1 October 1991, the NCAPA was amended, 1991 N.C. Sess. Laws ch. 418, § 2, and now reads, in pertinent part:

### § 150B-1. Policy and scope.

(a) Purpose.—This Chapter establishes a uniform system of administrative rule making and adjudicatory procedures for agencies. The procedures ensure that the functions of rule making, investigation, advocacy, and adjudication are not all performed by the same person in the administrative process.

(b) Rights.—This Chapter confers procedural rights.

(c) Full Exemptions.—This Chapter applies to every agency except:

(1) The North Carolina National Guard in exercising its court-martial jurisdiction.

(2) The Department of Human Resources in exercising its authority over the Camp Butner reservation granted in Article 6 of Chapter 122C of the General Statutes.

(3) The Utilities Commission.

(4) The Industrial Commission.

(5) The Employment Security Commission.

(d) Exemptions from Rule Making.—Article 2A of this Chapter does not apply to the following:

(1) The Commission.

(2) The North Carolina Low-Level Radioactive Waste Management Authority in administering the provisions of G.S. 104G-10 and G.S. 104G-11.

(3) The North Carolina Hazardous Waste Management Commission in administering the provisions of G.S. 130B-13 and G.S. 130B-14.

(4) The Department of Revenue, except that Parts 3 and 4 of Article 2A apply to the Department.

(5) The North Carolina Air Cargo Airport Authority with respect to the acquisition, construction, operation, or use, including fees or charges, of any portion of a cargo airport complex.

(e) Exemptions From Contested Case Provisions.—The contested case provisions of this Chapter apply to all agencies and all proceedings not expressly exempted from the Chapter. The contested case provisions of this Chapter do not apply to the following:

(1) The Department of Human Resources and the Department of Environment, Health, and Natural Resources in complying with the procedural safeguards mandated by Section 680 of Part H of Public law 99-457 as amended (Education of the Handicapped Act Amendments of 1986).

(2) The Governor's Waste Management Board in administering the provisions of G.S. 104E-6.2 and G.S. 130A-293.

(3) The North Carolina Low-Level Radioactive Waste Management Authority in administering the provisions of G.S. 104G-9, 104G-10, and 104G-11.

(4) The North Carolina Hazardous Waste Management Commission in administering the provisions of G.S. 130B-11, 130B-13, and 130B-14.

(5) Hearings required pursuant to the Rehabilitation Act of 1973, (Public Law 93-122), as amended and federal regulations promulgated thereunder. G.S. 150B-51(a) is considered a contested case hearing provision that does not apply to these hearings.

(6) The Department of Revenue.

(7) The Department of Correction.

(8) The Department of Transportation, except as provided in G.S. 136-29.

(9) The Occupational Safety and Health Review Board in all actions that do not involve agricultural employers.

(10) The North Carolina Air Cargo Airport Authority with respect to the acquisition, construction, operation, or use, including fees or charges, of any portion of a cargo airport complex.

(f) Exemption from All But Judicial Review.—No Article in this Chapter except Article 4 applies to The University of North Carolina.

N.C.G.S. § 150B-1 (1991). The equivocal language of purpose and applicability construed in *Vass* was deleted: "The purpose of this Chapter is to establish *as nearly as possible* a uniform system of administrative rule making and adjudicatory procedures for State agencies." N.C.G.S. § 150B-1(b) (1987, superseded) (emphasis added). "This Chapter shall apply to every agency, as defined in G.S. 150B-2(1), *except to the extent and in the particulars that any statute, including subsection (d) of this section, makes specific provisions to the contrary.*" N.C.G.S. § 150B-1(c) (1987, superseded) (emphasis added). Language was added which clearly, unambiguous-

ly, and in accordance with our interpretation in *Vass*, declares the purpose and applicability of the statute: "This Chapter establishes a uniform system of administrative rule making and adjudicatory procedures for agencies." N.C.G.S. § 150B-1(a) (1991). "This Chapter confers procedural rights." N.C.G.S. § 150B-1(b) (1991). "The contested case provisions of this Chapter apply to all agencies and all proceedings not expressly exempted from the Chapter." N.C.G.S. § 150B-1(e) (1991).

Thus, the General Assembly clarified that which previously was doubtful. *See Town of Hazelwood v. Town of Waynesville*, 320 N.C. 89, 95, 357 S.E.2d 686, 689, *reh'g denied*, 320 N.C. 639, 360 S.E.2d 106 (1987) ("When the legislature amends an ambiguous statute, the presumption is not that its intent was to change the original act, but 'merely to '. . . clarify that which was previously doubtful.' ' " (quoting *Trustees of Rowan Tech. v. Hammond Assoc.*, 313 N.C. 230, 240, 328 S.E.2d 274, 280 (1985) (quoting *Childers v. Parker's, Inc.*, 274 N.C. 256, 260, 162 S.E.2d 481, 484 (1968))). The language now is clear and provides that the NCAPA confers procedural rights to, *inter alia*, administrative hearings. *See* N.C.G.S. ch. 150B, art. 3. Therefore, we cannot hold, as respondents urge, that, apart from the context of agencies or proceedings expressly excepted therefrom, the NCAPA does not confer such a right. *See Lemons v. Old Hickory Council*, 322 N.C. 271, 276-77, 367 S.E.2d 655, 658, *reh'g denied*, 322 N.C. 610, 370 S.E.2d 247 (1988) ("When the language of a statute is clear and unambiguous, there is no room for judicial construction, and the courts must give it its plain and definite meaning.").

The NCAPA provides, further:

It is the policy of this State that any dispute between an agency and another person that involves the person's rights, duties or privileges, . . . should be settled though informal procedures. . . . If the agency and the other person do not agree to a resolution of the dispute through informal procedures, either the agency or the person may commence an administrative proceeding to determine the person's rights, duties, or privileges, at which time the dispute becomes a "contested case."

N.C.G.S. § 150B-22 (1991).

A contested case shall be commenced by filing a petition with the Office of Administrative Hearings and . . . shall be conducted by that Office. . . . The parties in a contested case shall be given an

opportunity for a hearing without undue delay. Any person aggrieved may commence a contested case hereunder.

N.C.G.S. § 150B-23(a) (1991).

Interpretation of these provisions, a matter for this Court, will clarify the range of situations in which the NCAPA entitles a person to commence an administrative hearing. In contrast,

> [u]nder the vast majority of state APA's [sic] and the Federal APA, the *right* to invoke the adjudication procedures is not provided by the APA's [sic] themselves. Instead, the right under most APA's [sic] arises only when rights, duties or privileges "are required by law to be determined by an agency after an opportunity for hearing" or like formulation. Unlike this majority, the NC APA does not limit the procedural protections governing adjudications to instances when the constitution or statutes require a right to an evidentiary hearing.

Charles E. Daye, *North Carolina's New Administrative Procedure Act: An Interpretive Analysis*, 53 N.C. L. Rev. 833, 869 (1975) [hereinafter Daye, *Administrative Procedure*].

Respondents misconstrue the relation of the organic statute to the NCAPA. The NCAPA confers procedural rights and imposes procedural duties, including the right to commence an administrative hearing to resolve disputes between an agency and a person involving the person's rights, duties, or privileges. The organic statute may confer procedural rights and impose procedural duties in addition to those conferred and imposed by the NCAPA, but more importantly, it defines those rights, duties, or privileges, abrogation of which provides the grounds for an administrative hearing pursuant to the NCAPA.[1]

---

1. For example, permanent state employees of agencies not expressly exempted from the administrative hearing provisions of the NCAPA, as was the case in *Batten*, and subject to the State Personnel Act, are entitled to an administrative hearing by virtue of the NCAPA as well as the State Personnel Act. In turn, it is only because the latter act, N.C.G.S. § 126-35, creates a right in public employment, *i.e.*, the right not to be discharged, suspended or reduced in pay or position except for just cause, *see Batten*, 326 N.C. at 343, 389 S.E. 2d at 38-39, that the employee is entitled to a hearing by virtue of the NCAPA also. But for N.C.G.S. § 126-35, those employees can have no dispute involving their *rights, duties, or privileges*, within the meaning of N.C.G.S. § 150B-22. *See Nantz v. Employment Security Comm.*, 290 N.C. 473, 226 S.E.2d 340 (1976) (plaintiff's employment was terminated prior to effective date of the NCAPA and the amendments to the State Personnel System making provisions for employee appeals of grievances and disciplinary actions; the Court reiterated that "[e]mployment

**[1]** For these reasons also, we decline to adopt respondents' interpretation of the NCAPA, and instead reaffirm that the NCAPA confers upon any "person aggrieved" the right to commence an administrative hearing to resolve a dispute with an agency involving the person's rights, duties, or privileges. To the extent that the language in *Batten*, reiterated in *Harding v. Dept. of Correction*, 334 N.C. 414, 417-18, 432 S.E.2d 298, 300 (1993), suggests otherwise, it is disapproved. To the extent that *Citizens for Clean Industry v. Lofton*, 109 N.C. App. 229, 427 S.E.2d 120 (1993) may be viewed as inconsistent herewith, it is also disapproved.

### III.

We turn, then, to whether petitioner Clark is entitled to an administrative hearing under the relevant statutes. The General Assembly enacted the air pollution control section of Chapter 143 in 1973 "to provide for the conservation of [the State's] . . . air resources." N.C.G.S. § 143-211 ("Declaration of public policy") (1993). It further declared:

> [I]t is the intent of the General Assembly . . . to achieve and to maintain for the citizens of the State a total environment of superior quality. Recognizing that the water and air resources of the State belong to the people, the General Assembly affirms the State's ultimate responsibility for the preservation and development of these resources in the best interest of all its citizens and declares the prudent utilization of these resources to be essential to the general welfare. It is the purpose of this Article to create an agency which shall administer a program of water and air pollution control and water resource management. It is the intent of the General Assembly, through the duties and powers defined herein, to confer such authority upon the Department of Environment, Health, and Natural Resources as shall be necessary to administer a complete program of water and air conservation, pollution abatement and control and to achieve a coordinated effort of pollution abatement and control with other jurisdictions. Standards of water and air purity shall be designed to protect human health, to prevent injury to plant and animal life, to pre-

---

by the State . . . does not *ipso facto* confer tenure or a property right in the position," and, at the time plaintiff was terminated, no statute of this State conferred upon State employees . . . tenure or the right to judicial review of an administrative action terminating the employment"). And clearly, the state employee is directly affected substantially in his person, property or employment by a decision to terminate him. *See* N.C.G.S. § 150B-2(6) (definition of "person aggrieved").

vent damage to public and private property, to insure the continued enjoyment of the natural attractions of the State, to encourage the expansion of employment opportunities, to provide a permanent foundation for healthy industrial development and to secure for the people of North Carolina, now and in the future, the beneficial uses of these great natural resources.

*Id.*

To implement the program developed by the Environmental Management Commission ("Commission")[2] for the prevention of significant deterioration and the attainment of air quality standards established pursuant to the act, in areas of non-attainment such as that here, the General Assembly mandated that "no person shall . . . [e]stablish or operate any air contaminant source[, or b]uild, erect, use or operate any equipment which may result in the emission of air contaminants or which is likely to cause air pollution[,]" unless that person has obtained a permit therefor. N.C.G.S. § 143-215.108(a) (1993). Thus, the General Assembly empowered the Commission "[t]o grant and renew a permit with such conditions attached as the Commission believes necessary to achieve the purposes of this section or the requirements of the Clean Air Act," N.C.G.S. § 143-215.108(c)(1), "[t]o request such information from an applicant and to conduct such inquiry or investigation as it may deem necessary and to require the submission of plans and specifications prior to acting on any application for a permit," N.C.G.S. § 143-215.108(c)(5), and "[t]o require that an applicant satisfy the Department that the applicant . . . [h]as substantially complied with the air quality and emission control standards applicable to any activity in which the applicant has previously engaged, and has been in substantial compliance with federal and state laws, regulations, and rules for the protection of the environment." N.C.G.S. § 143-215.108(c)(5a). "The Commission shall act upon all applications for permits so as to effectuate the purpose of this section, by reducing existing air pollution and preventing, so far as reasonably possible, any increased pollution of the air from any additional or enlarged sources." N.C.G.S. § 143-215.108(b). With regard to administrative review of a decision of the Commission regarding a permit application, the section provides:

A permit applicant or permittee who is dissatisfied with a decision of the Commission may commence a contested case by filing

2. The Commission is a commission of respondent DEHNR created in N.C.G.S. § 143B-282 (1993).

a petition under G.S. 150B-23 within 30 days after the Commission notifies the applicant or permittee of its decision. If the permit applicant or permittee does not file a petition within the required time, the Commission's decision on the application is final and is not subject to review.

N.C.G.S. § 143-215.108(e) (1993). The section makes no express provision for an administrative appeal by aggrieved parties other than the permittee or permit applicant, nor does it expressly prohibit such an appeal.

In 1974 the General Assembly enacted the North Carolina Administrative Procedure Act to "establish[] a uniform system of administrative rule making and adjudicatory procedures for agencies" and "ensure that the functions of rule making, investigation, advocacy, and adjudication are not all performed by the same person in the administrative process." N.C.G.S. § 150B-1(a). "When the Act [became] effective on February 1, 1976, North Carolina for the first time [had] a comprehensive statute governing major parts of the procedures by which most agencies of the State execute their functions. The Act also sets out procedures that . . . govern the relationship between the agencies and citizens affected by agency action and the relationship between agencies and the courts." Daye, *Administrative Procedure* 835. "The basic purpose of a comprehensive administrative procedure act (APA) is to provide minimum uniform standards to govern administrative action." *Id.* at 837. The NCAPA confers procedural rights to, and establishes uniform procedures for, *inter alia,* such administrative hearings. The NCAPA provides that "[a]ny person aggrieved may commence a contested case hearing hereunder." N.C.G.S. § 150B-23(a). The contested case hearing provisions "apply to all agencies [, broadly defined, with specific exceptions by category, *see* N.C.G.S. § 150B-2(1) (1991),] and all proceedings not expressly exempted from the Chapter." N.C.G.S. § 150B-1(e).

There is no inherent right of appeal from an administrative decision to either the OAH or the courts. "No appeal lies from an order or decision of an administrative agency of the State or from judgments of special statutory tribunals whose proceedings are not according to the course of the common law, unless the right is granted by statute." *In re Assessment of Sales Tax,* 259 N.C. 589, 592, 131 S.E.2d 441, 444 (1963). Petitioner Clark has no right to appeal to the OAH from the decision of the Commission pursuant to any provision of the organic statute. If he has such a right, it is by virtue of the NCAPA.

**[2]** Neither the agency nor the proceeding are expressly exempted from the NCAPA. Thus, nothing else appearing, the administrative hearing provisions of the NCAPA clearly apply to the respondent agency, DEHNR, and to the air pollution control permit proceeding. Respondent DEHNR is an agency of the executive branch of state government within the purview of the NCAPA, and its decisions are not subject to review under any statute other than the NCAPA. N.C.G.S. § 143-215.108(e) provides that the permit applicant or permittee may commence an administrative hearing only "under N.C.G.S. § 150B-23." "[T]he General Assembly has shown itself to be quite capable of specifically and expressly naming the particular agencies to be exempt from the provisions of the Act and has clearly specified the extent of each such exemption." *Vass*, 324 N.C. at 407, 379 S.E.2d at 29; *cf., e.g.*, N.C.G.S. § 150B-1(c) (1991) (fully exempting enumerated agencies by stating that "[t]his Chapter applies to every agency except [the enumerated agencies]"); 150B-1(d) (1991) (exempting enumerated agencies from rulemaking by stating "Article 2A of this Chapter does not apply to the following"); 150B-1(e) (1991) (exempting enumerated agencies from contested case provisions of the APA by stating that "[t]he contested case provisions of this Chapter do not apply to the following [enumerated agencies and proceedings]"); and 150B-1(f) (1991) (exempting The University of North Carolina "from [a]ll [b]ut [j]udicial [r]eview"); 130B-8(8) (1993) ("Article 2 of Chapter 150B shall not apply to contractor selection or technology selection pursuant to G.S. 130B-13 and G.S. 130B-14. Articles 3 and 3A of Chapter 150B shall not apply to final decisions regarding site selection, contractor selection or technology selection pursuant to G.S. 130B-11, 130B-13, and 130B-14."). The General Assembly expressly provided that the contested case provisions do not apply to DEHNR "in complying with the procedural safeguards mandated by Section 680 of Part H of Public Law 99-457 as amended (Education of the Handicapped Act Amendments of 1986)." N.C.G.S. § 150B-1(e)(1). Had it also intended that DEHNR, in undertaking air pollution control permit-letting, be excluded from the administrative hearings provisions of the NCAPA, we assume it would have inserted a similarly specific provision in either the NCAPA or Chapter 143 expressly stating this intent. *See Lemons v. Old Hickory Council*, 322 N.C. 271, 276, 367 S.E.2d 655, 658, *reh'g denied*, 322 N.C. 610, 370 S.E.2d 247 (1988) ("By setting out these specific exceptions . . ., the General Assembly implicitly excluded all other exceptions.").

Thus, under the NCAPA, N.C.G.S. § 150B-23, petitioner Clark is entitled to an administrative hearing to resolve a dispute involving his rights, duties, or privileges, unless (1) he is not a "person aggrieved," *id.*, by the decision of the Commission, or (2) the organic statute, specifically N.C.G.S. § 143-215.108(e), amends, repeals or makes an exception to the NCAPA so as to exclude him from those expressly entitled to appeal thereunder.

## A.

**[3]** Under the NCAPA, any "person aggrieved" within the meaning of the organic statute is entitled to an administrative hearing to determine the person's rights, duties, or privileges. N.C.G.S. § 150B-23(a). " 'Person aggrieved' means any person or group of persons of common interest directly or indirectly affected substantially in his or its person, property, or employment, by an administrative decision." N.C.G.S. § 150B-2(6). Under the predecessor judicial review statute, which did not define the term, the Court gave it an expansive interpretation:

> The expression "person aggrieved" has no technical meaning. What it means depends on the circumstances involved. It has been variously defined: "Adversely or injuriously affected; damnified, having a grievance, having suffered a loss or injury, or injured; also having cause for complaint. More specifically the word(s) may be employed meaning adversely affected in respect of legal rights, or suffering from an infringement or denial of legal rights."

*In re Assessment of Sales Tax*, 259 N.C. at 595, 131 S.E.2d at 446 (quoting 3 C.J.S. *Aggrieved*, at 509 (1973)). For the following reasons, we conclude that Clark is a "person aggrieved" as defined by the NCAPA within the meaning of the organic statute.

Clark alleged that DEHNR issued the permit allowing construction and operation of air emission sources at the LCTS in violation of its statutory and regulatory duties: to act on all permit applications "so as to effectuate the [legislative] purpose . . . by reducing existing air pollution and preventing, so far as reasonably possible, any increased pollution of the air from any additional or enlarged sources," N.C.G.S. § 143-215.108(b); to reduce levels of ozone pollution in the Mecklenburg County area; to assess fully the impact of emissions of air pollutants from the LCTS on levels of ozone pollution in Mecklenburg County; to assess fully the impact of sulfur dioxide

emissions from the LCTS; to require air pollution control technology adequate to control the emission of potentially harmful pollutants from the LCTS; and to require Duke Power to cause air quality offsets. Clark also alleged that DEHNR issued the permit in violation of its statutory duty to adequately address comments filed by Clark and other members of the public during the public comment period.

Clark further alleged that, as the owner of property immediately adjacent to and downwind of the site of the proposed LCTS—which will emit tons of harmful air pollutants if constructed and operated in accordance with its air quality permit—he and his family will suffer injury to their health, the value of their property, and the quality of life in their home and their community.

In enacting the air pollution control provisions, the General Assembly, as noted above, declared its intent

> to achieve and to maintain for the citizens of the State a total environment of superior quality. Recognizing that the water and air resources of the State belong to the people, the General Assembly affirm[ed] the State's ultimate responsibility for the preservation and development of these resources in the best interest of all its citizens and declare[d] the prudent utilization of these resources to be essential to the general welfare.

N.C.G.S. § 143-211. To further that intent, the General Assembly mandated that standards of water and air purity be designed, and programs implemented to achieve those standards,

> to protect human health, to prevent injury to plant and animal life, to prevent damage to public and private property, to insure the continued enjoyment of the natural attractions of the State, to encourage the expansion of employment opportunities, to provide a permanent foundation for healthy industrial development and to secure for the people of North Carolina, now and in the future, the beneficial uses of these great natural resources.

Id. (emphasis added).

Clearly, Clark alleged sufficient injury in fact to interests within the zone of those to be protected and regulated by the statute, and rules and standards promulgated pursuant thereto, the substantive and procedural requirements of which he asserts the agency violated when it issued the permit. As an adjacent property owner downwind of the LCTS, Clark may be expected to suffer from whatever adverse

environmental consequences the LCTS might have. In addition, a judgment in favor of Clark would substantially eliminate or redress the injury likely to be caused by the decision to permit Duke Power to build the LCTS. Clark therefore is a "person aggrieved" within the meaning and intent of the air pollution control act. *See Orange County v. Dept. of Transportation,* 46 N.C. App. 350, 360-62, 265 S.E.2d 890, 898-99, *disc. rev. denied,* 301 N.C. 94 (1980) (plaintiffs were all "aggrieved," within the meaning of the NCAPA provision, by a decision of the State Board of Transportation on the location of an interstate highway where the individual plaintiffs were property owners within the proposed corridor of the highway, the members of plaintiff non-profit corporation were citizens and taxpayers who lived in or near the proposed highway corridor, plaintiff county's tax base and planning jurisdiction would be affected, and individual plaintiffs would be affected as taxpayers; further, the "procedural injury" implicit in the failure of an agency to prepare an environmental impact statement was itself a sufficient "injury in fact" to support standing as an "aggrieved party" under former N.C.G.S. § 150A-43, as long as such injury was alleged by a plaintiff having sufficient geographical nexus to the site of the challenged project that he might be expected to suffer whatever environmental consequences the project might have); *State of Tennessee v. Environmental Management Comm.,* 78 N.C. App. 763, 766-67, 338 S.E.2d 781, 783 (1986) (a consent special order issued by respondent agency to a corporation allowing it to discharge effluents into a river was issued without a hearing and by its own terms purported to take precedence over the terms of a proposed National Pollutant Discharge Elimination System permit to the corporation, so that the right of petitioner to be heard was impaired; petitioner therefore qualified as an "aggrieved person" for purposes of judicial review; further, petitioner alleged that its property rights in the river were affected, and these allegations also established petitioner's "aggrieved person" status); *see generally* 2 Am. Jur. 2d *Administrative Law* §§ 443-50 (1994) ("Persons Adversely Affected or Aggrieved").

### B.

**[4]**  Having concluded that petitioner Clark is clearly a "person aggrieved" under the NCAPA, we turn to the question of whether the organic statute amends, repeals, or makes an exception to the NCAPA so as to exclude him from those entitled to an administrative hearing thereunder.

**EMPIRE POWER CO. v. N.C. DEPT. OF E.H.N.R.**

[337 N.C. 569 (1994)]

In construing the laws creating and empowering administrative agencies, as in any area of law, the primary function of a court is to ensure that the purpose of the Legislature in enacting the law, sometimes referred to as legislative intent, is accomplished. The best indicia of that legislative purpose are "the language of the statute, the spirit of the act, and what the act seeks to accomplish." *Stevenson v. City of Durham,* 281 N.C. 300, 303, 188 S.E.2d 281, 283 (1972). . . .

We should be guided by the rules of construction that statutes *in pari materia,* and all parts thereof, should be construed together and compared with each other. Such statutes should be reconciled with each other when possible, and any irreconcilable ambiguity should be resolved so as to effectuate the true legislative intent.

*Comr. of Insurance v. Rate Bureau,* 300 N.C. 381, 399-400, 269 S.E.2d 547, 561, *reh'g denied,* 301 N.C. 107, 273 S.E.2d 300 (1980) (citation omitted). " '[B]ut, to the extent of any necessary repugnancy between them, the special statute, or the one dealing with the common subject matter in a minute way, will prevail over the general statute . . . unless it appears that the legislature intended to make the general act controlling.' " *Batten,* 326 N.C. at 344, 389 S.E.2d at 39 (quoting *Food Stores v. Board of Alcoholic Control,* 268 N.C. 624, 628-29, 151 S.E.2d 582, 586 (1966)).

"Ordinarily, [however,] the enactment of a law will not be held to have changed a statute that the legislature did not have under consideration at the time of enacting such law; and implied amendments cannot arise merely out of supposed legislative intent in no way expressed, however necessary or proper it may seem to be. *An intent to amend a statute will not be imputed to the legislature unless such intention is manifestly clear from the context of the legislation; and an amendment by implication, or a modification of, or exception to, existing law by a later act, can occur only where the terms of a later statute are so repugnant to an earlier statute that they cannot stand together.*"

*In re Assessment of Sales Tax,* 259 N.C. at 594, 131 S.E.2d at 445 (quoting 82 C.J.S. *Statutes,* § 252, at 419-20 (1953)) (emphasis added).

The NCAPA entitles petitioner to an administrative hearing; the organic statute, respondents contend, denies him that right.[3] The question thus is whether the legislature intended, in enacting the air pollution control administrative review provisions, to deprive petitioner of the right it expressly conferred upon him in the NCAPA. Applying the foregoing rules of statutory construction, we conclude that because the organic statute did not expressly provide otherwise, the legislature did not intend to deprive petitioner of his right to an administrative hearing.

The organic statute states:

A permit applicant or permittee who is dissatisfied with the decision of the Commission may commence a contested case by filing a petition under G.S. 150B-23 within 30 days after the Commission notifies the applicant or permittee of its decision. If the permit applicant or permittee does not file a petition within the required time, the Commission's decision on the application is final and is not subject to review.

N.C.G.S. § 143-215.108(e). This statute makes no provision for petitioner to commence a contested case hearing, nor does it expressly deny him that right. Respondents, however, would have us apply to it the maxim *expressio unius est exclusio alterius, see, e.g., Campbell v. Church*, 298 N.C. 476, 482, 259 S.E.2d 558, 563 (1969) (mention of specific circumstances *implies* the exclusion of others), and con-

---

3. The organic statute, N.C.G.S. § 143-215.108(e), has been amended subsequently to any amendments to N.C.G.S. §§ 150B-22 or -23. N.C.G.S. § 143-215.108(e) was amended under an act entitled "An Act Making Conforming and Technical Amendments to the General Statutes Concerning Administrative Procedure." 1987 N.C. Sess. Laws ch. 827, s. 206. The amendments generally changed references from Chapter 150A, which had been repealed, to Chapter 150B. Prior to the 1987 amendments, N.C.G.S. § 143-215.108, in pertinent part, read:

Any person whose application for a permit or renewal thereof is denied or is granted subject to conditions which are unacceptable to such person or whose permit is modified or revoked shall have the right to a hearing before the Environmental Management Commission upon making demand therefor within 30 days following the giving of notice by the Environmental Management Commission as to its decision upon such application. Unless such a demand for a hearing is made, the decision of the Environmental Management Commission on the application shall be final and binding. If demand for a hearing is made, the procedure with respect thereto and with respect to all further proceedings shall be as specified in G.S. 143-215.4 and in any applicable rules of procedure of the Environmental Management Commission.

N.C.G.S. § 143-215.108 (1983, superseded).

clude that the legislature intended, albeit by implication, to exclude persons aggrieved, other than the permit applicant or permittee, from those entitled to a contested case hearing under the NCAPA.

N.C.G.S. § 143-215.108(e) and N.C.G.S. § 150B-23, however, are *in pari materia*, and we must give effect to both if possible. Respondents basically contend that the organic statute amends, repeals, or makes exception to the NCAPA *by implication*. "The presumption is always against an intention to repeal an earlier statute." *In re Assessment of Sales Tax*, 259 N.C. at 595, 131 S.E.2d at 445. We thus should not construe the silence of N.C.G.S. § 143-215.108(e) as to the rights of petitioner to commence an administrative hearing as a repeal of any such rights expressly conferred upon him under the NCAPA. The legislature has not expressed or otherwise made manifestly clear an intent to deprive petitioner of any right of appeal he might have by virtue of the NCAPA; moreover, there is not such repugnancy between the statutes as to create an implication of amendment or repeal "to which we can consistently give effect under the rules of construction of statutes." *Id.*

There is, instead, a fair and reasonable construction of the organic statute that harmonizes it with the provisions of the NCAPA, and it is our duty to adopt that construction. *See In re Miller*, 243 N.C. 509, 514, 91 S.E.2d 241, 245 (1956) ("[T]here is a presumption against inconsistency, and when there are two or more statutes on the same subject, in the absence of an express repealing clause, they are to be harmonized and every part allowed significance, if it can be done by fair and reasonable interpretation."). The first sentence of N.C.G.S. § 143-215.108(e) plainly establishes a deadline of thirty days for the filing of a petition to commence a contested case by the permit applicant or permittee, which differs from the general limitation of sixty days specified in N.C.G.S. § 150B-23(f); it thus constitutes an exception to the specific hearing procedures established by the NCAPA *and expressly contemplated therein. See* N.C.G.S. § 150B-23(e) ("Hearings shall be conducted according to the procedures set out in this Article, except to the extent and in the particulars that specific hearing procedures and time standards are governed by another statute."); N.C.G.S. § 150B-23(f) ("Unless another statute . . . sets a time limitation for the filing of a petition in contested cases against a specified agency the general limitation for the filing of a petition in a contested case is 60 days.").

Respondents urge us to attach a technical meaning to the term "final" in the second sentence of N.C.G.S. § 143-215.108(e) and inter-

pret that sentence to mean that, in the event the permit applicant or permittee does not timely file a petition for a contested case hearing, the Commission's decision on the permit application is a "final agency decision," subject only to judicial review on behalf of a permit applicant, permittee, or other aggrieved person. That interpretation, however, renders the statute inconsistent with well-established statutory and common-law prerequisites to administrative and judicial review of administrative decisions. An aggrieved person may commence an administrative hearing only by timely filing a petition therefor in the OAH, N.C.G.S. § 150B-23; failure to timely file constitutes waiver of any right to that administrative remedy. Judicial review, in turn, is generally available only to aggrieved persons who have exhausted all administrative remedies made available by statute or agency rule. N.C.G.S. § 150B-43; *see, e.g., Presnell v. Pell*, 298 N.C. 715, 721, 260 S.E.2d 611, 615 (1979) (when the legislature has provided by statute an effective administrative remedy, that remedy is exclusive, and a party must pursue and exhaust such remedy before resorting to the courts, especially where the statute establishes a procedure whereby matters of regulation and control are first addressed by commissions or agencies particularly qualified for the purpose). Therefore, we conclude that the intent of the language is that any permittee or permit applicant who fails to timely appeal from the decision of the Commission has waived any right to administrative and judicial review of that decision. *See State v. Koberlein*, 309 N.C. 601, 605, 308 S.E.2d 442, 446 (1983) ("Where the words of a statute have not acquired a technical meaning, they must be construed in accordance with their common and ordinary meaning unless a different meaning is apparent or clearly indicated by the context in which they are used.").

The primary purpose of the NCAPA is to confer procedural rights, including the right to an administrative hearing, upon any person aggrieved by an agency decision; the statutes should be liberally construed together to preserve and effectuate that right. In *In re Appeal of Harris*, 273 N.C. 20, 27, 159 S.E.2d 539, 545 (1968) (construing predecessor statute to N.G.G.S. ch. 150B, art. 4 ("Judicial Review"), we stated, "[t]he primary purpose of this statute is to confer such right to judicial review; and, in our opinion, the statute should be liberally construed *to preserve and effectuate such right."); see generally Land Co. v. Lange*, 150 N.C. 26, 30, 63 S.E. 164, 166 (1908) (A remedial statute should be liberally construed to advance the remedy.).

Considering the unequivocal "language of the statute [the NCAPA], the spirit of the act, and what the act seeks to accomplish,"

**EMPIRE POWER CO. v. N.C. DEPT. OF E.H.N.R.**

[337 N.C. 569 (1994)]

*Stevenson v. City of Durham,* 281 N.C. 300, 303, 188 S.E.2d 281, 283 (1972), we conclude that the legislature intended that the NCAPA should control unless the organic statute *expressly* provides otherwise. *Cf. Vass,* 324 N.C. at 407, 379 S.E.2d at 29 ("It is clear that the General Assembly intended only those agencies it expressly and unequivocally exempted from the provisions of the [NCAPA] be excused in any way from the Act's requirements and, even in those instances, that the exemption apply only to the extent specified by the General Assembly."). We hold, therefore, that the organic statute, N.C.G.S. § 143-215.108(e), does not amend, repeal, or make exception to the NCAPA so as to deprive petitioner of his right to an administrative hearing thereunder, and that petitioner is entitled to commence an administrative hearing in the OAH to determine his right under the air pollution control act to have DEHNR issue or deny the air quality permits in question in accordance therewith. *Accord Vass,* 324 N.C. 402, 379 S.E.2d 26 (although the organic statute granted petitioner the right to a hearing before the Medical Plan Board and provided that the Board's decision would be "final and binding," the Court concluded that it was not a statute which exempted the Board from the requirements of the NCAPA because the language was not "an express and unequivocal exemption" therefrom; therefore, plaintiff was entitled to an administrative hearing in the OAH to determine his rights under the Medical Plan); *In re Assessment of Sales Tax,* 259 N.C. at 594-95, 131 S.E.2d at 445 (although the organic act only provided that taxpayers could appeal from the decision of the Tax Review Board to the superior court, the Commissioner of Revenue could appeal by virtue of N.C.G.S. Chapter 143, Article 33, predecessor to Chapter 150B, Article 4 ("Judicial Review"); the Court held that "the silence of [the organic statute] as to the rights of the Commissioner to appeal may not be construed as a repeal of any such rights which may have been granted to him under G.S. 143-307. G.S. 105-241.3 and G.S. 143-307 are *in pari materia* and it is our duty to give effect to both if possible. The presumption is always against an intention to repeal an earlier statute.").

C.

[5] Finally, respondents contend that because DEHNR's review of applications for air pollution control permits is detailed, comprehensive and highly technical, the permitting decision is properly made by technical experts, as opposed to administrative law judges. Once the public has had the opportunity to comment on whether the permit should be granted, any review of that decision for a third party, such

as petitioner Clark, should be made in superior court on the record; there should not be a new evidentiary hearing in the OAH. At best, they argue, such a hearing would be duplicative of the process already completed by DEHNR over a lengthy period of time and would be redundant; at worst, it would allow third parties to use the OAH to undermine the integrity of the permitting process and result in the delay of important public projects such as the LCTS and in the waste of limited State resources.

We recognize that ·

[t]he reasons for creating administrative agencies include efficiency, speed, volume, flexibility and informality. Weighed against these are fairness considerations—equitable treatment of persons in like circumstances, notice, opportunity to participate, regularized process, articulated reasons for agency action and overall "rationality" in agency process. The inherent clash of such objectives can only be minimized by careful balancing in particular instances.

Daye, *Administrative Procedure* 845. We must assume that the General Assembly carefully balanced these policy considerations prior to adoption of the NCAPA and amendments thereto. Having carefully balanced such considerations, the General Assembly clearly stated, in N.C.G.S. § 150B-1(e), that the administrative hearing provisions of the NCAPA apply to all agencies and all proceedings except those expressly exempted therefrom, and it expressly named the particular agencies exempted therefrom, specifying the extent of each such exemption. The General Assembly did not expressly exempt DEHNR or the air pollution control permit proceeding therefrom, nor did it expressly provide that aggrieved persons thereunder are not entitled to an administrative hearing pursuant thereto.

IV.

For these reasons, we hold that the trial court correctly concluded that the OAH had subject matter jurisdiction, and that the Court of Appeals erred in reversing the trial court. Accordingly, the decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further remand to the Superior Court, Wake County, for reinstatement of that court's order allowing petitioner Clark's motion to dismiss the judicial proceedings, and remanding the case to the OAH for further proceedings.

REVERSED AND REMANDED.