NORTH CAROLINA FORESTRY ASSOCIATION, PETITIONER v. NORTH CAROLINA DEPARTMENT OF ENVIRONMENT AND NATURAL RESOURCES, DIVISION OF WATER QUALITY, AND THE NORTH CAROLINA ENVIRONMENTAL MANAGEMENT COMMISSION AND ITS NPDES COMMITTEE, RESPONDENTS; AND THE SIERRA CLUB AND DOGWOOD ALLIANCE

No. 653A02

(Filed 5 December 2003)

**Environmental Law— contested case—standing—person aggrieved—stormwater general permit—wood chip industry**

The trial court did not err by holding that the N.C. Forestry Association (NCFA) was a person aggrieved under the North Carolina Administrative Procedure Act and therefore had stand-

ing to commence a contested case proceeding to challenge respondent EMC's denial of a stormwater general permit for the wood chip industry, because: (1) the NCFA and its members are adversely affected by the exclusion of new and expanding wood chip mills from the pertinent general permit when the result is that those mills will be forced to undergo the lengthy and detailed process of seeking individual permits instead of the prior minimal administrative process; and (2) the present case involves licensing of wood chip mills to operate in our state, and the North Carolina Administrative Procedure Act states that any action involving licensing is by definition a contested case.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 154 N.C. App. 18, 571 S.E.2d 602 (2002), reversing an order entered 27 March 2001 by Judge Howard E. Manning, Jr., in Superior Court, Wake County. Heard in the Supreme Court 15 October 2003.

*Hunton & Williams, by Charles D. Case, Craig A. Bromby, Jeff F. Cherry, and Julie Beddingfield, for petitioner-appellant.*

*Roy Cooper, Attorney General, by Jill B. Hickey, Special Deputy Attorney General, for respondent-appellees.*

*Southern Environmental Law Center, by Donnell Van Noppen III, and Sierra Weaver, for intervenor-appellees.*

WAINWRIGHT, Justice.

Petitioner-appellant North Carolina Forestry Association (NCFA) is a non-profit trade association whose members engage in forest management and timber products industries, including wood chip mills. Wood chip mills take cut logs and other large pieces of wood and process them into smaller chips that are used in the production of paper and plywood products.

Respondent-appellees are state agencies responsible for regulating water quality in North Carolina. These agencies have authority to issue permits pursuant to the National Pollutant Discharge Elimination System (NPDES) required by the federal Clean Water Act. 33 U.S.C. § 1342 (2000). The Clean Water Act, along with Chapter 143 of our General Statutes, and the rules of the North Carolina Environmental Management Commission, require facilities to obtain NPDES permits for stormwater discharges associated with their

**N.C. FORESTRY ASS'N v. N.C. DEP'T OF ENV'T & NATURAL RES.**

[357 N.C. 640 (2003)]

industrial activities. *See* 33 U.S.C. § 1342 (2000); N.C.G.S. § 143-215.1 (2001); 15A NCAC 2B, 2H (2003).

The present case arises from the decision of the North Carolina Department of Environment and Natural Resources, Division of Water Quality (DWQ), to exclude new and expanding wood chip mills from a generally available stormwater permitting system and to instead subject the wood chip industry to a more rigorous individual permitting process.

In 1992, DWQ issued thirteen NPDES stormwater general permits. One of these permits, NPDES Stormwater General Permit No. NCG040000 (NCG04), authorized the discharge of stormwater runoff associated with the industrial activities of certain segments of the timber products industry, including wood chip mills. The NCG04 general permit expired on 31 August 1997.

On 1 April 1998, DWQ issued NPDES Stormwater General Permit No. NCG210000 (NCG21). Unlike NCG04, the NCG21 permit excluded wood chip mills. As a result, DWQ began requiring new and expanding wood chip mills to obtain more detailed and time-consuming individual NPDES stormwater permits.

In June 1998, NCFA, acting on behalf of its timber industry members, challenged DWQ's exclusion of wood chip mills from the NCG21 general permit. NCFA petitioned for a contested case hearing for administrative review under the North Carolina Administrative Procedure Act. NCFA argued that:

> NCFA and its members are "persons aggrieved" as defined in N.C.G.S. § 150B-2(6) because NCFA and its members are persons directly and indirectly affected substantially in the persons and property by the administrative decision to exclude wood chip mills from coverage under the General Permit. NCFA's members who decide to locate and permit new chip mills in North Carolina will be subject to, among other things, burdensome application procedures and additional monitoring and reporting requirements.

On 19 March 1999, an administrative law judge filed a recommended decision in the case, concluding, among other things, that the NCG21 general permit should be reissued without the exclusion of wood chip mills. The administrative law judge also found that NCFA was a "person aggrieved" and thus had standing to bring the

claim at issue. The administrative law judge further noted that the final agency decision in this case would be rendered by the Environmental Management Commission of the Department of Environment and Natural Resources.

On 5 November 1999, the Environmental Management Commission issued its Final Agency Decision, rejecting the administrative law judge's recommendation and instead concluding that NCFA lacked standing to challenge the issuance of NCG21. NCFA thereafter sought judicial review of the agency decision.

On 14 March 2001, the Wake County Superior Court heard NCFA's Petition for Judicial Review. The superior court concluded, among other things, that NCFA had standing to bring the contested case as a "person aggrieved."

NCFA appealed to the Court of Appeals and respondent state agencies cross-assigned error as to the trial court's conclusion that NCFA had standing. On 19 November 2002, a divided panel of the Court of Appeals reversed the trial court, holding that NCFA was not a "person aggrieved" and thus lacked standing. *North Carolina Forestry Ass'n v. Dep't of Env't and Natural Res.*, 154 N.C. App. 18, 24, 571 S.E.2d 602, 606 (2002). The dissent, however, concluded that NCFA had standing on two independent grounds: (1) because NCFA was a "person aggrieved," and (2) because the relevant action involved a "licensing" as defined in N.C.G.S. § 150B-2. *Id.* at 25-28, 571 S.E.2d at 606-08; *see also* N.C.G.S. § 150B-2(2) (2001) (defining "contested case" to include disputes over "licensing"); N.C.G.S. § 150B-2(3) (defining "license" as "any certificate, *permit* or other evidence, by whatever name called, of a right or privilege to engage in any activity" (emphasis added)).

On 27 December 2002, NCFA filed a Notice of Appeal and Petition for Discretionary Review in this Court. On 12 June 2003, this Court denied NCFA's Petition for Discretionary Review. Accordingly, our review is focused solely on the issue that formed the basis of the dissent: whether NCFA is a "person aggrieved" under the North Carolina Administrative Procedure Act and therefore has standing to commence a contested case proceeding to challenge DWQ's denial of a stormwater general permit for the wood chip industry. Having thoroughly reviewed the applicable statutory authorities and this Court's precedents, we conclude NCFA is a "person aggrieved" and therefore has standing to bring the contested case.

In general, individuals "adversely affected by a discretionary agency decision generally have standing to complain that the agency based its decision upon an improper legal ground." *FEC v. Akins*, 524 U.S. 11, 25, 141 L. Ed. 2d 10, 23 (1998). In North Carolina, disputes between a state government agency and another person may be formally resolved with the filing of an administrative proceeding referred to as a "contested case." N.C.G.S. § 150B-22 (2001). A contested case is intended "to determine the person's rights, duties, or privileges." *Id.* "Any person aggrieved may commence a contested case [proceeding]." N.C.G.S. § 150B-23(a); *see also Empire Power Co. v. North Carolina Dep't of Env't, Health and Nat. Resources*, 337 N.C. 569, 588, 447 S.E.2d 768, 779 (1994).

A "person aggrieved" is "any person or group of persons of common interest directly or indirectly affected substantially in his or its person, property, or employment by an administrative decision." N.C.G.S. § 150B-2(6) (2001); *Empire Power*, 337 N.C. at 588, 447 S.E.2d at 779. This Court has stated that whether a party is a "person aggrieved" must be determined based on the circumstances of each individual case. *Empire Power*, 337 N.C. at 588, 447 S.E.2d at 779.

In the present case, NCFA is adversely affected by the exclusion of new and expanding wood chip mills from the NCG21 general permit. Prior to this exclusion, the operation of a new or expanding wood chip mill was a generally permitted activity that required minimal administrative process. As a result of their present exclusion from the NCG21 permit, new and expanding wood chip mills are forced to undergo the lengthy and detailed process of seeking individual permits. Accordingly, because the issuance of the NCG21 general permit adversely affected NCFA and its members, we conclude NCFA is a "person aggrieved" under the facts of the present case and thus has standing to bring a contested case hearing.

Additionally, the present case clearly involves the "licensing" of wood chip mills to operate in our state. The North Carolina Administrative Procedure Act states that any action involving "licensing" is by definition a contested case. N.C.G.S. § 150B-2(2). The North Carolina Administrative Procedure Act defines a "license" as "any certificate, *permit* or other evidence, by whatever name called, of a right or privilege to engage in any activity." N.C.G.S. § 150B-2(3) (emphasis added). Because we conclude that the NCG21 permit fits within this definition, we further conclude that the present case involves a licensing. This provides a distinct basis to conclude that NCFA has standing.

In sum, we hold that NCFA has standing to bring a contested case hearing and the Court of Appeals' decision was thus in error. As to any and all issues not herein addressed, we expressly decline to make any conclusions. Accordingly, we reverse the decision of the Court of Appeals and remand this case to that court for further proceedings not inconsistent with this opinion.

REVERSED.