BENJAMIN WHITE v. N.C. DEPARTMENT OF CORRECTION

No. 9312SC862

(Filed 3 January 1995)

1. **Public Officers and Employees § 41 (NCI4th)— decision by State Personnel Commission—timeliness**

Though the State Personnel Commission did not make its decision in this case within 90 days after receiving the official record, it did make its decision within 90 days of its next regularly scheduled meeting; therefore, the decision was timely, and the trial court properly refused to find that the decision was made on unlawful procedure. N.C.G.S. § 150B-44.

**Am Jur 2d, Civil Service §§ 52 et seq.**

2. **Public Officers and Employees § 67 (NCI4th)— inability of petitioner to perform job responsibilities—sufficiency of evidence to support findings**

There was no merit to petitioner's argument that the State Personnel Commission erred in finding that he was not able to perform all his duties as a correctional officer where correctional officers were required to rotate through all positions, and the physician who examined petitioner concluded that he could not perform all the duties listed in the job description for a correctional officer.

**Am Jur 2d, Civil Service §§ 52 et seq.**

3. **Handicapped Persons § 25 (NCI4th)— inability to perform duties of correctional officer—risk to self and others— petitioner not qualified handicapped person—accommodations not required of respondent**

Because petitioner could not perform the duties of the job of correctional officer as defined in the job description and petitioner's condition could create an unreasonable risk to himself, his fellow correctional officers, other inmates, and the public at large, petitioner was not a "qualified handicapped person," and respondent was under no duty to make accommodations for petitioner's physical condition. N.C.G.S. §§ 168A-3(4), 168A-3(9)(a).

**Am Jur 2d, Job Discrimination §§ 111 et seq.**

**Accommodation requirement under state legislation forbidding job discrimination on account of handicap. 76 ALR4th 310.**

**What constitutes handicap under state legislation forbidding job discrimination on account of handicap. 82 ALR4th 26.**

**Who is "qualified" handicapped person protected from employment discrimination under Rehabilitation Act of 1973 (29 USCS §§ 701 et seq.) and regulations promulgated thereunder. 80 ALR Fed. 830.**

4. **Public Officers and Employees § 67 (NCI4th)— State employee put on permanent leave without pay—suspension—just cause required**

Respondent's placement of petitioner on permanent leave without pay amounted to a suspension under the State Personnel Act, and the case is remanded for a determination of whether such suspension was made for just cause. N.C.G.S. § 126-35.

**Am Jur 2d, Civil Service §§ 52 et seq.**

Appeal by petitioner from order entered 16 April 1993 by Judge Wiley F. Bowen in Cumberland County Superior Court. Heard in the Court of Appeals 21 April 1994.

Petitioner, a former employee of respondent N.C. Department of Correction, filed a grievance with respondent alleging that he had been placed on leave without pay discriminatorily because he had a handicapping condition and because he had earlier filed a grievance

**WHITE v. N.C. DEPT. OF CORRECTION**

[117 N.C. App. 521 (1995)]

concerning his work place. Following a contested case hearing, Administrative Law Judge Robert Reilly, Jr. made a recommended decision that petitioner be reinstated. The full State Personnel Commission (the Commission), however, rejected the ALJ's recommended decision and affirmed respondent's decision to place petitioner on leave without pay. Petitioner appealed this decision to the superior court. Following a hearing on the matter, Judge Bowen entered an order on 16 April 1993, affirming the Commission's order. From this order, petitioner appeals.

*Reid, Lewis, Deese & Nance, by James R. Nance, Jr., for petitioner-appellant.*

*Attorney General Michael F. Easley, by Assistant Attorney General Valerie L. Bateman, for respondent-appellee.*

McCRODDEN, Judge.

Relying upon fifteen assignments of error, petitioner argues the trial court erred in (I) determining that the Commission's decision was not made upon unlawful procedure, (II) finding that the Commission's decision was supported by substantial competent evidence, and (III) determining that the Commission's order was not affected by error of law.

The facts are as follows. In June 1990, petitioner was employed by respondent as a correctional officer at Hoke Correctional Institution in McCain, North Carolina. For security reasons, that facility required all correctional officers to rotate among all of the custody positions.

On 22 June 1990, petitioner alleged that he pulled his back while trying to lift a trap door in one of the facility's guard towers, tower number 3. He requested that he not be assigned to work in that tower until the door was repaired. He subsequently requested not to be assigned to another tower which had a particularly long spiral staircase. On 29 June 1990, petitioner filed a written grievance after he was again assigned to work in tower number 3. In response to this, the Assistant Superintendent Wilford Shields met with petitioner on 3 July 1990. Shields informed petitioner that for the time being he would not be assigned to work in tower number 3, but that he would be required to undergo an examination by a medical specialist to determine whether he could continue to perform his duties as a correctional officer.

Petitioner continued to work, and on 24 July 1990, he was instructed that he should not report to work until the evaluation of his back had been performed. Petitioner then began to use his accumulated vacation and sick leave. On 7 August 1990, petitioner filed a claim with the N.C. Industrial Commission for workers' compensation benefits for the injury to his back allegedly sustained on 22 June 1990. However, respondent refused to accept liability for petitioner's claim because petitioner had failed to notify respondent of his injury immediately or within 30 days of the injury.

On 17 August 1990, Dr. J.N. Ellis, who had examined petitioner, wrote to respondent to report on petitioner's physical status, stating:

> In my opinion, based on his past injury and his current problems with degenerative joint disease in the spine, I do not think that he could perform all the duties listed in the job description of a Correctional Officer and [in the] Criminal Justice physical requirements, especially in regard to lifting, carrying and dragging heavy objects, and pursuing foot-fleeing subjects. . . . I would agree that he should be restricted from lifting greater than 25 pounds and should not do strenuous physical activity.

By 22 August 1990, petitioner had exhausted all of his vacation and sick leave, and respondent placed him on unpaid leave status. Dr. Ellis examined petitioner again and wrote a second letter to respondent stating that petitioner was not totally disabled and that he was "capable of maintaining a job that is not as strenuous as described in his job description."

In reviewing a trial court's consideration of an agency's final decision, our task is to determine whether the trial court properly applied the standard of review mandated by N.C. Gen. Stat. § 150B-51 (1991). *Walker v. N.C. Dept. of Human Resources*, 100 N.C. App. 498, 502, 397 S.E.2d 350, 353 (1990), *disc. review denied*, 328 N.C. 98, 402 S.E.2d 430 (1991). That statute provides that a reviewing court may reverse or modify an agency's decision if:

> [T]he substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

> . . . .

(3) Made upon unlawful procedure;

(4) Affected by other error of law; [or]

(5) Unsupported by substantial evidence . . . in view of the entire record as submitted.

N.C.G.S. § 150B-51.

The standard of review the trial court applies depends upon the issues presented on appeal. *Brooks, Com'r of Labor v. Rebarco, Inc.*, 91 N.C. App. 459, 463, 372 S.E.2d 342, 344 (1988). When an appellant alleges that the agency made an error of law, the trial court must review the matter *de novo*; however, when the issue is the sufficiency of the evidence to support the agency's order, it applies the whole record test. *Id.* The standard of review for administrative decisions is the same in the Court of Appeals as in superior court. *Teague v. Western Carolina University*, 108 N.C. App. 689, 691, 424 S.E.2d 684, 686, *disc. review denied*, 333 N.C. 466, 427 S.E.2d 627 (1993). We do not defer to the superior court's decision. *Id.*, at 691-92, 424 S.E.2d at 686.

I.

[1] Petitioner's first argument, that the Commission's decision was made upon unlawful procedure, implicates the *de novo* standard of review, and therefore allows us to substitute freely our judgment for that of the Commission. Nonetheless, we find that the Commission's decision was not grounded upon unlawful procedure.

Petitioner argues that the Commission rendered its decision outside the time allowed. An agency such as the Commission has 90 days from the day it receives the official record in a contested case from the Office of Administrative Hearings, or 90 days after its next regularly scheduled meeting, whichever is longer, to make a final decision in a case. N.C. Gen. Stat. § 150B-44 (1991). In this case, the Commission received the official record on 5 December 1991 and rendered its decision on 30 April 1991, more than 90 days after it received the record. However, the Commission's next regularly scheduled meeting after 5 December 1991 was 4 February. Petitioner concedes that the decision was rendered within 90 days of the 4 February meeting. Based on this admission, we conclude that the Commission timely made its decision and the trial court properly refused to find that the decision was made on unlawful procedure.

II.

**[2]**  Petitioner next argues that certain of the Commission's findings were not supported by substantial evidence. We disagree.

In addressing this issue, we use the whole record test, which means that we must examine all the competent evidence, including that which contradicts the Commission's findings, to determine if the Commission's findings were supported by substantial evidence. *Henderson v. N.C. Dept. of Human Resources*, 91 N.C. App. 527, 530-31, 372 S.E.2d 887, 889-90 (1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Thompson v. Board of Education*, 292 N.C. 406, 414, 233 S.E.2d 538, 544 (1977) (quoting *Commissioner of Insurance v. Rating Bureau*, 292 N.C. 70, 79, 231 S.E.2d 882, 888 (1977)). In applying the whole record test to this case, we are not allowed to replace the Commission's judgment as between two reasonably conflicting views of the evidence. *Id.* at 410, 233 S.E.2d at 541.

Petitioner argues that the Commission erred in finding that he was not able to perform all his duties both because he was able to work after his injury and because Dr. Ellis stated that he was not totally disabled and could perform some of the duties of a correctional officer. However, we find that the Commission's finding was well supported. In light of the fact that correctional officers at Hoke were required to rotate through all positions, Dr. Ellis' conclusion that petitioner could not perform all of the duties listed in the job description for a correctional officer, is certainly substantial evidence supporting the Commission's finding.

We find petitioner's further assertion, that the Commission erred in finding that his handicap renders him not fit by definition to be a correctional officer, similarly meritless. Dr. Ellis' opinion that respondent could not perform all of the duties of a correctional officer as listed in the job description adequately supports the Commission's finding.

III.

In his next three arguments, petitioner alleges errors of law, again requiring us to review the issues *de novo*. Petitioner argues that the Commission misapplied the law in determining that the respondent did not owe petitioner a duty to make reasonable accommodations for petitioner's condition. We disagree.

[3] When a "qualified handicapped person" requests that an accommodation be made for his handicapping condition, his employer must investigate whether there are reasonable accommodations that can be made and must make reasonable accommodations for the person's condition. N.C. Gen. Stat. § 168A-4 (1987). Assuming without deciding that petitioner is a "handicapped person," as that term is defined in N.C. Gen. Stat. § 168A-3(4) (1987), we conclude that petitioner is not a *qualified* handicapped person." That term means:

> With regard to employment, a handicapped person who can satisfactorily perform the duties of the job in question, with or without reasonable accommodation, (i) provided that the handicapped person shall not be held to standards of performance different from other employees similarly employed, and (ii) further provided that the handicapping condition does not create an unreasonable risk to the safety or health of the handicapped person, other employees, the employer's customers, or the public.

N.C.G.S. 168A-3(9)(a). The evidence demonstrates that the petitioner could not perform the duties of the job of correctional officer as defined in the job description. Furthermore, given the fact that the job of correctional officer entails the supervision of inmates, we believe that petitioner's condition, which renders him unable to pursue foot-fleeing inmates or physically subdue them effectively, could create an unreasonable risk to himself, his fellow correctional officers, other inmates and the public at large. As petitioner was not a "qualified handicapped person," we conclude that respondent was under no duty to make accommodations for petitioner's physical condition.

Next, petitioner argues that the Commission misinterpreted the workers' compensation law in making its decision. The Commission found that "[p]etitioner did not file a worker's compensation claim about his alleged injury until August 7, 1990, even though departmental policy, about which he knew, required him to notify the agency immediately or, at the latest, within 30 days of his work-related injury."

Petitioner does not contend that he actually filed a claim within 30 days of his injury or that he did not know of the respondent's policy concerning workers' compensation claims. Rather, he claims that "[t]his finding adds nothing to the decision except to give the department an excuse as to why it didn't give [petitioner] an accommodation." We agree that this finding added nothing to the Commissions

order but, having determined that respondent did not owe petitioner the duty to make accommodation for his condition, find that its inclusion was harmless. We reject these assignments of error.

[4] Finally, petitioner argues that the Commission erred in failing to conclude, as the ALJ had determined, that by placing petitioner on unpaid leave, respondent actually suspended him without cause.

The Commission accepted the ALJ's finding that petitioner was a permanent State employee subject to the State Personnel Act, N.C. Gen. Stat. §§ 126-1 to -88 (1993). However, the Commission refused to adopt each of the ALJ's conclusions of law. In his first conclusion, the ALJ stated:

> The petitioner was a permanent State employee subject to the State Personnel Act. Involuntary placement on permanent leave without pay status for alleged inability to perform the duties of the job is the equivalent of being discharged, suspended and involuntarily separated for disciplinary reasons under GS 126-35. The respondent is required to establish just cause. The respondent failed to establish the required substantive just cause. Furthermore, the respondent failed to afford the petitioner the benefits of progressive warnings required by GS 126-35. It is arbitrary and capricious to deny the petitioner the opportunity to establish that he is able to perform the essential duties of a correctional officer despite his back injury.

State agencies may not discharge or suspend a permanent State employee except for just cause. N.C.G.S. § 126-35. Before subjecting a State employee to such disciplinary action, the State shall furnish him with a written statement of the grounds for the action and of the employee's appeal rights. *Id.* This section requires that a State employee be given three warnings before he may be terminated. *Jones v. Dept. of Human Resources*, 300 N.C. 687, 691, 268 S.E.2d 500, 502 (1980). It is uncontested that petitioner received no such warning.

Thus, the question presented for our *de novo* review is: when respondent placed petitioner on leave without pay, was this the equivalent of suspension for disciplinary reasons within the meaning of N.C.G.S. § 126-35? We conclude that it was.

Respondent asserts that leave without pay is not a sanction but a benefit offered to State employees. It is true that Subchapter 1E of Title 25 of the North Carolina Administrative Code, which contains the regulation relating to leave without pay, is entitled "Employee

FAGEN'S OF NORTH CAROLINA v. ROCKY RIVER REAL ESTATE CO.

[117 N.C. App. 529 (1995)]

Benefits." It is also true that a State agency is required to reinstate an employee who takes leave without pay at his previous position or at one of like seniority, status and pay. N.C. Admin. Code tit. 25, r. 1E.1104 (January 1994). However, the leave without pay described in Subchapter 1E is voluntary leave, initiated by the employee. *See* N.C. Admin. Code tit. 25, r. 1E.1103 ("The employee shall apply in writing to his supervisor for leave without pay.").

In this case, petitioner made no application for leave without pay. Instead, respondent placed him involuntarily on sick leave until his accumulated time elapsed, then required him to expend his accumulated vacation, and finally placed him on leave without pay. This was, in essence, a suspension, which could not be made without just cause.

Neither the Commission nor the trial court made any findings relative to the issue of whether respondent suspended petitioner without just cause. Having concluded that the respondent's placement of petitioner on permanent leave without pay amounted to a suspension under the State Personnel Act, we remand the case for a determination of whether such suspension was made for just cause.

Remanded.

Chief Judge ARNOLD and Judge GREENE concur.

Opinion written and concurred in prior to 16 December 1994.