MAHATAM S. JAILALL, Petitioner v. NORTH CAROLINA DEPARTMENT OF PUBLIC INSTRUCTION, Respondent

No. COA08-352

(Filed 7 April 2009)

**Administrative Law— termination without just cause by reduction in force—OAH jurisdiction**

The Office of Administrative Hearings (OAH) did not have subject matter jurisdiction of a petition for a contested case hearing brought by a former career employee of the Department of Public Instruction alleging that he had been discharged without just cause when his employment was terminated as a result of a reduction in force (RIF) because: (1) N.C.G.S. § 126-34.1 provides the statutory list of exclusive appeal grounds, and the list does not provide for appeals to OAH of RIFs based on lack of just cause; (2) the Court of Appeals is bound by the decision in *University of North Carolina at Chapel Hill v. Feinstein*, 161 N.C. App. 700 (2003), and the distinction between university employees as opposed to DPI employees is immaterial to the

JAILALL v. N.C. DEP'T OF PUB. INSTRUCTION

[196 N.C. App. 90 (2009)]

analysis; and (3) the prior Court of Appeals decision in *White v. N.C. Dep't of Corr.*, 117 N.C. App. 521 (1995), is not relevant to the facts of this case because *White* held that the employer cannot avoid the requirement of "just cause" by placing the label of involuntary "leave without pay" on an action that is in actuality a suspension, and petitioner has not specifically argued in his contested case petition, his petition for judicial review, or on appeal that the RIF in this case was not actually a RIF, but instead was a sham RIF falling within the scope of *White*.

Appeal by petitioner from order entered 3 March 2008 by Judge A. Leon Stanback in Wake County Superior Court. Heard in the Court of Appeals 11 September 2008.

*Law Offices of Michael C. Byrne, P.C., by Michael C. Byrne, for petitioner-appellant.*

*Attorney General Roy Cooper, by Assistant Attorney General Laura E. Crumpler, for respondent-appellee.*

*State Employees Association of North Carolina, Inc., by Thomas A. Harris, General Counsel, for amicus curiae State Employees Association of North Carolina, Inc.*

GEER, Judge.

Petitioner Mahatam S. Jailall appeals from the superior court's order affirming the dismissal of his contested case by the Office of Administrative Hearings ("OAH"). Jailall's petition for a contested case hearing alleged that he had been discharged without just cause when his employment was terminated as a result of a reduction in force ("RIF"). Both the OAH administrative law judge ("ALJ") and the superior court concluded that *Univ. of N.C. at Chapel Hill v. Feinstein*, 161 N.C. App. 700, 590 S.E.2d 401 (2003), *disc. review denied*, 358 N.C. 380, 598 S.E.2d 380 (2004), required that the contested case be dismissed. Although Jailall contends that *Feinstein* is distinguishable, we have concluded it controls this appeal, and, under *In re Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989), we are required to affirm the decision below. The concerns raised by both Jailall and the amicus curiae, State Employees Association of North Carolina, Inc., as to the consequences of *Feinstein* cannot influence this panel's decision, but rather must be addressed to the Supreme Court and the General Assembly.

Facts

In 2007, Jailall was employed as an education consultant by respondent North Carolina Department of Public Instruction ("DPI"). Because he had in excess of 24 months of continuous state service, he was a career State employee under N.C. Gen. Stat. § 126-1.1 (2007). On 30 August 2007, DPI sent Jailall a "Notice of Reduction in Force (RIF) Separation." The notice stated that his position was 100% funded by a federal program that had been discontinued and, therefore, the funding for his position would expire on 30 September 2007. The notice advised Jailall that he had a right to appeal the decision to terminate his employment and that he was entitled to priority re-employment.

On 2 October 2007, Jailall filed a petition for a contested case with OAH, alleging that he was selected for the RIF because of "(a) his race and national origin (Asian Indian and Guyana, respectively), in violation of state and federal law, and (b) for the additional discriminatory reason of protecting from RIF on the grounds of race the positions of one or more African-American females having less seniority than Petitioner, also in violation of state and federal law." After following DPI's internal grievance procedures and obtaining a final agency decision upholding his RIF on 2 November 2007, Jailall filed a second petition with OAH on 7 November 2007, alleging that he was "involuntarily separated from employment without just cause." In this petition, Jailall alleged that DPI "(1) [e]xceeded its authority or jurisdiction, (2) [a]cted erroneously, (3), [sic] [f]ailed to use proper procedure, (4) [f]ailed to act as required by law or rule, and/or (5) was arbitrary, capricious, and/or abused its discretion."

On 10 December 2007, DPI moved to dismiss the 7 November 2007 petition pursuant to N.C.R. Civ. P. 12(b)(1) or (b)(6) or alternatively for summary judgment. DPI noted that the petition asserted that the RIF was without just cause. DPI contended that *Feinstein* precluded such a claim and, therefore, OAH had no jurisdiction over Jailall's petition. On 21 December 2007, the OAH ALJ granted DPI's motion pursuant to N.C.R. Civ. P. 12(b)(1).

On 2 January 2008, Jailall filed a petition for judicial review in Wake County Superior Court. The Honorable A. Leon Stanback entered an order on 3 March 2008, noting that Jailall alleged that he was involuntarily separated from employment due to a RIF and that he was entitled to appeal his involuntary RIF separation under N.C. Gen. Stat. § 126-34.1 (2007) for lack of just cause and for procedural

violations. The trial court ruled: "Based upon reviewing the legal question raised in this petition for judicial review on a *de novo* basis, this Court finds that it is constrained by the Court of Appeals' decision in *Univ. of N.C. at Chapel Hill v. Feinstein*, 161 N.C. App. 700, 590 S.E.2d 401 (2003), [*disc. review denied*], 358 N.C. 380, 598 S.E.2d 380 (2004), holding that career state employees separated under a RIF could not bring either just cause or procedural appeals based on that separation." The trial court, therefore, affirmed the ALJ's decision dismissing Jailall's contested case petition. Jailall timely appealed to this Court.

## Discussion

Jailall argues that the trial court erred in affirming the ALJ's decision dismissing Jailall's contested case for lack of subject matter jurisdiction. Jailall first contends that N.C. Gen. Stat. § 126-34.1, read in conjunction with N.C. Gen. Stat. § 126-35 (2007), provides OAH jurisdiction to hear contested cases brought by former state employees alleging that their involuntary separation due to a RIF was without just cause. Jailall also argues that OAH has subject matter jurisdiction to hear his contested case based on the allegation in his petition that DPI "[f]ailed to use proper procedure" in conducting the RIF.[1]

N.C. Gen. Stat. § 126-34.1 provides in pertinent part:

(a) A State employee or former State employee may file in the Office of Administrative Hearings a contested case under Article 3 of Chapter 150B of the General Statutes only as to the following personnel actions or issues:

(1) Dismissal, demotion, or suspension without pay based upon an alleged violation of G.S. 126-35, if the employee is a career State employee.

. . . .

(e) Any issue for which appeal to the State Personnel Commission through the filing of a contested case under Article 3 of Chapter 150B of the General Statutes has not been specifically

---

1. Because the ALJ dismissed the petition under Rule 12(b)(1) for lack of subject matter jurisdiction, the documents attached to DPI's motion were properly considered. *See Tubiolo v. Abundant Life Church, Inc.*, 167 N.C. App. 324, 327, 605 S.E.2d 161, 163 (2004) ("In considering a motion to dismiss for lack of subject matter jurisdiction, it is appropriate for the court to consider and weigh matters outside of the pleadings."), appeal dismissed and disc. review denied, 359 N.C. 326, 611 S.E.2d 853, cert. denied, 546 U.S. 819, 163 L. Ed. 2d 59, 126 S. Ct. 350 (2005).

authorized by this section shall not be grounds for a contested case under Chapter 126.

N.C. Gen. Stat. § 126-34.1(a)(1) and (e). In turn, N.C. Gen. Stat. § 126-35, the provision referenced in N.C. Gen. Stat. § 126-34.1(a)(1), states:

> (a) No career State employee subject to the State Personnel Act shall be discharged, suspended, or demoted for disciplinary reasons, except for just cause. . . .
>
> . . . .
>
> (c) For the purposes of contested case hearings under Chapter 150B, an involuntary separation (such as a separation due to a reduction in force) shall be treated in the same fashion as if it were a disciplinary action.

N.C. Gen. Stat. § 126-35(a) and (c).

Jailall reads the reference in N.C. Gen. Stat. § 126-34.1(a)(1) to N.C. Gen. Stat. § 126-35 as establishing OAH jurisdiction over his just cause RIF claim "given [that] 126-35 itself states that the statute is violated not only by a disciplinary dismissal without just cause, but also by an involuntary separation, 'such as . . . a [RIF],' without just cause . . . ." *Feinstein,* however, holds to the contrary.

In *Feinstein,* three state employees who worked in the university system had their positions eliminated as a result of a RIF. 161 N.C. App. at 701-02, 590 S.E.2d at 402. On appeal, this Court addressed whether N.C. Gen. Stat. § 126-34.1 "excludes appeals to OAH of RIFs on grounds of lack of just cause and procedural violations." *Id.* at 702, 590 S.E.2d at 402.

With respect to whether an employee dismissed as a result of a RIF may assert a claim for dismissal without just cause, the panel in *Feinstein* noted first:

> N.C. Gen. Stat. § 126-34.1(a)(1) specifically refers to "dismissal, demotion, or suspension" without just cause but does not mention RIFs for lack of just cause as a basis for appealing a RIF. RIFs are specifically referred to only twice in the statute. The General Assembly clearly stated in N.C. Gen. Stat. § 126-34.1 that a contested case that "has not been *specifically authorized* by this section *shall not* be grounds for a contested case under Chapter 126." N.C. Gen. Stat. § 126-34.1(e) (2001) (emphasis supplied).

*Id.* at 704, 590 S.E.2d at 403. The Court reiterated: "The language of N.C. Gen. Stat. § 126-34.1 clearly and unambiguously states that the statutory list of appeal grounds in N.C. Gen. Stat. § 126-34.1 is exclusive. *This list does not provide for appeals to OAH of RIFs based on lack of just cause.*" *Id.* (emphasis added).

The Court acknowledged the language in N.C. Gen. Stat. § 126-35(c) providing that a separation due to a reduction in force "shall be treated in the same fashion as if it were a disciplinary action," N.C. Gen. Stat. § 126-35(c), but noted that § 126-34.1 was enacted five years after N.C. Gen. Stat. § 126-35. *Feinstein,* 161 N.C. App. at 704, 590 S.E.2d at 403. The Court then reasoned:

> By its own terms of exclusion, N.C. Gen. Stat. § 126-34.1 supersedes and controls over any contrary earlier enactments. N.C. Gen. Stat. § 126-35(c) existed as statutory law when N.C. Gen. Stat. § 126-34.1(e) was enacted. Our Supreme Court has held that construing conflicting statutes to give validity and effect to both is only possible if it can be done without destroying the evident intent and meaning of the later enacted act. Given its clear and unambiguous language, the later enacted N.C. Gen. Stat. § 126-34.1 supplants N.C. Gen. Stat. § 126-35. Otherwise, the evident intent of the later enacted N.C. Gen. Stat. § 126-34.1 in setting out the specific contested cases that are appealable to OAH would be eliminated.

*Id.* (internal citations omitted).

With respect to the employees' claim that the university had violated the procedures governing RIFs, the panel in *Feinstein* reviewed the legislative history of the bills resulting in N.C. Gen. Stat. §·126-34.1 and concluded:

> Here, the General Assembly considered granting state employees the right to bring RIF policy violations as a contested case before OAH. Both the House and Senate bills were amended to delete this particular ground from contested cases. The ratified bill enacted excluded this ground. The General Assembly clearly intended to deny OAH jurisdiction over challenges to RIFs on procedural violation grounds and to grant state employees the right to bring only those RIF claims that are specifically set out in N.C. Gen. Stat. § 126-34.1 before OAH.

*Feinstein,* 161 N.C. App. at 705, 590 S.E.2d at 404.

The Court then concluded: "The trial court erred in holding that the later enacted N.C. Gen. Stat. § 126-34.1 does not supersede N.C. Gen. Stat. § 126-35(c) and that OAH has jurisdiction to determine whether respondents' RIFs were based on lack of just cause or procedural violations." *Id.* at 706, 590 S.E.2d at 404. The Court reversed and remanded to the superior court for entry of an order directing OAH to grant the university's motion to dismiss. *Id.*

Jailall and the amicus each argue that the *Feinstein* panel's analysis of the applicable statutes and the legislative history of N.C. Gen. Stat. § 126-34.1 is flawed. We are not, however, free to revisit that panel's analysis. *See State v. Jones*, 358 N.C. 473, 487, 598 S.E.2d 125, 134 (2004) ("While we recognize that a panel of the Court of Appeals may disagree with, or even find error in, an opinion by a prior panel and may duly note its disagreement or point out that error in its opinion, the panel is bound by that prior decision until it is overturned by a higher court.").

Alternatively, Jailall argues that *Feinstein* is distinguishable because the employees in *Feinstein* were former employees of the North Carolina University system and, therefore, exempt from the contested case provisions in the Administrative Procedure Act ("APA"). *See* N.C. Gen. Stat. § 150B-1(f) (2007) (exempting University system from all but judicial review provisions of APA). Jailall points to *Feinstein's* acknowledgement of the employees' exemption from the APA and the panel's subsequent assertion that "[t]he rights of university employees to challenge any employment action in OAH must derive independently, from [t]he State Personnel Act." 161 N.C. App. at 703, 590 S.E.2d at 402. The Court further stated that "OAH's jurisdiction over appeals of university employee grievances exists solely within the limits established by the State Personnel Act." *Id.*, 590 S.E.2d at 403 (citing *Empire Power Co. v. N.C. Dep't of Env't, Health & Natural Res.*, 337 N.C. 569, 579, 447 S.E.2d 768, 774 (1994)).

Jailall notes that DPI employees, in contrast to the *Feinstein* employees, are subject to both the APA and the State Personnel Act ("SPA"). He contends that, based on this distinction, even if he cannot bring his just cause RIF claim as a contested case under N.C. Gen. Stat. § 126-34.1(a)(1), he is entitled to bring it under Article 3 of the APA, N.C. Gen. Stat. §§ 150B-22 through 150B-37 (2007). In making this argument, he relies upon the Supreme Court's decision in *Empire Power*.

In *Empire Power*, the Supreme Court "reaffirmed" the general principle that "the NCAPA confers upon any 'person aggrieved' the right to commence an administrative hearing to resolve a dispute with an agency involving the person's rights, duties, or privileges." 337 N.C. at 584, 447 S.E.2d at 777. A petitioner is entitled to bring a contested case under N.C. Gen. Stat. § 150B-23 (2007) "to resolve a dispute involving his rights, duties, or privileges, unless (1) he is not a 'person aggrieved,' by the decision of the [agency], or (2) the organic statute . . . amends, repeals or makes an exception to the NCAPA so as to exclude him from those expressly entitled to appeal thereunder." *Empire Power*, 337 N.C. at 588, 447 S.E.2d at 779 (internal citation omitted). *Accord North Buncombe Ass'n of Concerned Citizens, Inc. v. N.C. Dep't of Env't, Health & Natural Res.*, 338 N.C. 302, 304, 449 S.E.2d 451, 453 (1994) ("[T]he APA grants the right to a contested case hearing to all persons aggrieved by a state agency decision unless jurisdiction is expressly excluded by the APA or the organic act which created the right.").

There is no dispute that Jailall is a "person aggrieved" within the meaning of the APA, N.C. Gen. Stat. § 150B-2(6) (2007). As the Supreme Court acknowledged in *Empire Power*, the organic statute at issue for state employees is the SPA:

> For example, permanent state employees of agencies not expressly exempted from the administrative hearing provisions of the NCAPA, as was the case in *Batten* [*v. N.C. Dep't of Corr.*, 326 N.C. 338, 389 S.E.2d 35 (1990), *overruled in part by Empire Power Co. v. N.C. Dep't of Env't, Health & Natural Res.*, 337 N.C. 569, 447 S.E.2d 768 (1994)], and subject to the State Personnel Act, are entitled to an administrative hearing by virtue of the NCAPA as well as the State Personnel Act. In turn, it is only because the latter act, N.C.G.S. § 126-35, creates a right in public employment, *i.e.*, the right not to be discharged, suspended or reduced in pay or position except for just cause, *see Batten*, 326 N.C. at 343, 389 S.E.2d at 38-39, that the employee is entitled to a hearing by virtue of the NCAPA also. But for N.C.G.S. § 126-35, those employees can have no dispute involving their *rights, duties, or privileges*, within the meaning of N.C.G.S. § 150B-22.

337 N.C. at 583 n.1, 447 S.E.2d at 777 n.1.

Article 8 of the SPA, the "organic statute" in this case, is titled "Employee Appeals of Grievances and Disciplinary Action." Within this Article falls N.C. Gen. Stat. § 126-34.1, which is entitled "Grounds

for contested case under the State Personnel Act defined."[2] The SPA, through N.C. Gen. Stat. § 126-34.1(a) and (e), expressly "define[s]" the "only" types of "personnel actions or issues" that may be grounds for a contested case in OAH under Article 3 of the APA and unequivocally excludes from OAH jurisdiction those contested cases based on grounds "not . . . specifically authorized" by the statute. Under *Empire Power*, OAH's jurisdiction over DPI employees' contested cases derives exclusively from the SPA and not from the APA. *See also Dunn v. N.C. Dep't of Human Res.*, 124 N.C. App. 158, 161, 476 S.E.2d 383, 385 (1996) ("By [enacting N.C. Gen. Stat. § 126-34.1(e)], the General Assembly has indicated its intent to create grounds for appeal to the Commission through a contested case hearing only on issues for which appeal has been specifically authorized in G.S. section 126-34.1."). In other words, the distinction between *Feinstein* and this case—university employees as opposed to DPI employees—is immaterial to the analysis. *Feinstein's* holding is, therefore, controlling.

The amicus argues, however, that *Feinstein* effectively overruled a prior decision of this Court: *White v. N.C. Dep't of Corr.*, 117 N.C. App. 521, 451 S.E.2d 876 (1995). As the amicus notes, when two opinions of this Court conflict, we are obligated to follow "the older of the two cases." *In re R.T.W.*, 359 N.C. 539, 542 n.3, 614 S.E.2d 489, 491 n.3 (2005). *White* is not, however, relevant to the alleged facts of this case. As this Court stated in *White*, the question presented for review was: "[W]hen respondent placed petitioner on leave without pay, was this the equivalent of suspension for disciplinary reasons within the meaning of N.C.G.S. § 126-35?" *White*, 117 N.C. App. at 528, 451 S.E.2d at 881. After acknowledging that leave without pay can be a benefit to the employee, the Court pointed out that the employee "made no application for leave without pay. Instead, respondent placed him involuntarily on sick leave until his accumulated time elapsed, then required him to expend his accumulated vacation, and finally placed him on leave without pay." *Id.* at 529, 451 S.E.2d at 882. The Court concluded that involuntarily placing an employee on leave without pay cannot be distinguished from a suspension: "This was, in essence, a suspension, which could not be made without just cause." *Id.*

Amicus asserts that *White* established "[t]he principle . . . that a state career state [sic] employee's involuntary displacement from his

---

2. Empire Power was decided prior to the 1995 amendments to the SPA and, therefore, does not specifically mention N.C. Gen. Stat. § 126-34.1, which was enacted as part of those amendments. See 1995 N.C. Sess. Laws ch. 141.

job by his employer is, in essence, a disciplinary action for which Gen. Stat. § 126-35(a) requires just cause . . . ." *White* cannot be read this expansively. Instead, it holds that the employer cannot avoid the requirement of "just cause" by placing the label of involuntary "leave without pay" on an action that is in actuality a suspension.

While *White* is not inconsistent with *Feinstein*, it does protect employees from the negative consequences of *Feinstein* forecast by the amicus. According to amicus, "[t]he Superior Court's ruling, as it stands, allows a state agency employer to avoid OAH review of any disciplinary dismissal of an employee by simply stating that the purported reason for the dismissal is a RIF." Under *White*, however, an employee can still argue that the termination of his employment was not actually the result of a RIF, but rather the RIF label was used to disguise a dismissal without cause that would fall within the scope of N.C. Gen. Stat. § 126-34.1(a)(1). Moreover, an employee bringing a contested case under N.C. Gen. Stat. § 126-34.1(a)(2) may still argue that his purported RIF was a pretext for unlawful discrimination. *See, e.g., Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1194 (10th Cir. 2006) ("Where an employee is selected for RIF termination solely on the basis of position elimination, qualifications become irrelevant and one way that employee can show pretext is to present evidence that his job was not in fact eliminated but instead remained a single, distinct position." (internal quotation marks omitted)); *Christie v. Foremost Ins. Co.*, 785 F.2d 584, 586-87 (7th Cir. 1986) (holding that failure of defendant to comply with its own RIF policy allowed jury to conclude RIF was pretextual).

In this case, however, Jailall has not specifically argued in his contested case petition, his petition for judicial review, or on appeal that the RIF in this case was not actually a RIF, but instead was a sham RIF falling within the scope of *White*. The amicus' theory, arising out of *White*, cannot, therefore, serve as a basis for reversing the order below.[3] Under *Feinstein*, the trial court properly upheld the ALJ's decision dismissing Jailall's claim that his RIF lacked just cause and was the result of procedural violations. Accordingly, we must affirm the trial court's order.

Affirmed.

Judges STEELMAN and STEPHENS concur.

---

3. Although the amicus suggests that Jailall's reference to the "purported RIF" suggests that he was making the argument proposed by the amicus, the mere use of the

---

word "purported" without argument or discussion is too slim a reed on which to base a conclusion that Jailall intended to argue that his RIF falls within White. We also note that Jailall's contested case petition based on discrimination is still pending and not before us. Nothing in this opinion is intended to express any opinion on that contested case petition.