STATE OF NORTH CAROLINA v. ANTONIO LAMONT BAKER

No. COA10-98

(Filed 7 December 2010)

## 1. Appeal and Error— standard of review—denial of motion to suppress—no findings or conclusions

The appropriate standard of appellate review for the denial of a motion to suppress where the trial court did not make findings of fact and conclusions of law was whether the trial court provided the rationale for its ruling from the bench and whether there was a material conflict in the evidence presented at the suppression hearing. If both criteria are met, then the findings are implied and shall be binding on appeal if supported by competent evidence. If either is not met, then the failure to make findings and conclusions is fatal.

## 2. Criminal Law— denial of motion to suppress—material conflict in evidence—definition

For purposes of N.C.G.S. § 15A-977(f) (which requires findings and conclusions after the denial of a motion to suppress), a

STATE v. BAKER

[208 N.C. App. 376 (2010)]

material conflict in the evidence exists when evidence presented by one party controverts evidence presented by an opposing party such that the outcome of the matter is likely to be affected.

### 3. Criminal Law— denial of motion to suppress—material conflict of evidence—defendant's freedom to leave

There was a material conflict in the evidence presented at a suppression hearing where defendant's evidence that he did not feel free to leave controverted the State's evidence in a manner that affected the outcome of the matter to be decided. The trial court was therefore required to make findings and conclusions and its failure to do so was fatal to the validity of its denial of defendant's motion to dismiss.

Appeal by defendant from judgment entered 17 September 2009 by Judge Alma L. Hinton in Halifax County Superior Court. Heard in the Court of Appeals 2 September 2010.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General John J. Aldridge, III, for the State.*

*Greene & Wilson, P.A., by Thomas Reston Wilson, for defendant-appellant.*

JACKSON, Judge.

Antonio Lamont Baker ("defendant") appeals his 17 September 2009 conviction for carrying a concealed gun and possession of a firearm by a felon and his sentence of imprisonment. For the reasons stated herein, we reverse and remand with instructions.

During the evening of 23 October 2008 Officer Mike Moseley ("Officer Moseley"), a seven-year veteran of the Roanoke Rapids Police Department ("RRPD"), was on duty and conducting routine patrol. Officer Moseley and other officers were patrolling in the general vicinity of a nursing facility known as Guardian Care with the purpose of investigating past crimes and preventing future crime. Within the immediately preceding twenty-four hour period, just before midnight on 22 October 2008, Officer Moseley had responded to two incidents of breaking and entering of a vehicle that occurred in the parking lot of Guardian Care as well as two incidents of vandalism that occurred at separate locations within one block of Guardian Care. At the time of the 23 October 2008 patrol, RRPD did not have any suspects in custody related to the 22 October 2008 inci-

dents. Officer Moseley testified that the only description of possible perpetrators of the 22 October 2008 crimes was that "people from Guardian Care observed males in the vicinity."

Just before 11:00 p.m. on 23 October 2008, Officer Moseley encountered defendant walking in front of Guardian Care. Defendant was wearing dark outer clothing, including a jacket and pants. Upon seeing defendant, Officer Moseley activated his blue lights and maneuvered his patrol vehicle to a position behind defendant. Officer Moseley made radio contact with dispatch at 10:57 p.m. to notify them that he was exiting his patrol vehicle for the purpose of making a "field contact."[1] A second officer, Officer Hardy, arrived at the scene and assumed the role of backup officer. Other officers arrived at the scene during Officer Moseley's encounter with defendant.

After exiting his patrol vehicle, Officer Moseley approached defendant and asked him for his name, what he was doing on the street at that time of the night, and whether he had any outstanding warrants. Defendant responded by providing his name, denying that he had any warrants, and stating that he was walking home from his girlfriend's house. While defendant was speaking, Officer Moseley detected the odor of alcohol and observed that defendant was "real fidgety" and "looking around." Officer Moseley told defendant he was going to "pat him down real quick" and asked defendant if he had any weapons on him, to which defendant replied "no." In response to Officer Moseley's statement of intent to pat him down, defendant raised his hands as if to submit to the search.

The pat-down search performed by Officer Moseley consisted of Officer Moseley placing his right hand over the top of defendant's shirt and outer jacket at the level of defendant's waistband, and revealed an object that felt like the butt of a gun. Officer Moseley announced the presence of what he believed to be a gun to Officer Hardy, who was standing several feet behind defendant. Officer Moseley then handed Officer Hardy a pair of handcuffs, and Officer Hardy handcuffed defendant while Officer Moseley retrieved the gun from defendant's waistband.

The officers charged defendant with misdemeanor carrying a concealed gun in violation of North Carolina General Statutes, sec-

---

1. A "field contact" refers to a form routinely filled out by RRPD officers that records information related to contact made with citizens within an officer's patrol area that are "out and about at night." The field contact forms are retained by the RRPD and used to identify potential suspects of crimes reported at or near locations of a field contact.

tion 14-269(A1) and possession of a weapon while intoxicated in violation of section 131.02 of the Roanoke Rapids Code of City Ordinances. Upon learning that defendant previously had been convicted of a felony, officers charged defendant with possession of a firearm by a felon in violation of North Carolina General Statutes, section 14-415.1. On 16 February 2009, a grand jury returned a true bill of indictment regarding the statutory criminal offenses. On 17 September 2009, the trial court dismissed the charge of possession of a weapon while intoxicated due to insufficient evidence.

On 16 September 2009, defendant moved to suppress the evidence against him, reasoning that the evidence was the fruit of an unlawful search and in violation of the rights guaranteed to him by the Fourth and Fourteenth Amendments of the United States Constitution and similar provisions of the North Carolina Constitution. The evidence presented at the suppression hearing held on 17 September 2009 consisted of testimony from both Officer Moseley and defendant. After receiving the evidence and hearing the arguments of counsel, the trial court denied defendant's motion to suppress, stating "the stop was not unreasonable." A jury trial on the remaining criminal charges immediately followed the suppression hearing on 17 September 2009, concluding with a verdict of guilty and convicting defendant of carrying a concealed gun and possession of a handgun by a felon. That same day, the trial court entered a judgment and commitment order sentencing defendant to a term of imprisonment between twenty and twenty-four months. From the judgment of conviction and sentencing, defendant appeals.

[1] Defendant's first assignment of error is that the trial court's failure to make findings of fact and conclusions of law in connection with its ruling on defendant's motion to suppress in violation of North Carolina General Statutes, sections 15A-977 (d) and (f) constitutes reversible error. We agree.

When a motion to suppress is not summarily denied, the trial court "must make the determination after a hearing and finding of facts." N.C. Gen. Stat. § 15A-977(d) (2007). The trial court then "*must* set forth in the record [her] findings of facts and conclusions of law." N.C. Gen. Stat. § 15A-977(f) (2007) (emphasis added).

Both defendant and the State contend the standard of review for a trial court's ruling on a motion to suppress is that the trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting, and the trial court's con-

clusions of law are fully reviewable. *State v. Leach*, 166 N.C. App. 711, 715, 603 S.E.2d 831, 834 (2004). Defendant, however, recognizing that he has assigned as error the trial court's failure to make findings of fact and conclusions of law pursuant to North Carolina General Statutes, sections 15A-977(d) and (f), urges this Court to exercise its discretion to determine whether the trial court's failure to comply with section 15A-977(f) deprived defendant of meaningful review. The State argues that a trial court's conclusions of law regarding whether an officer had reasonable suspicion to detain defendant are reviewable *de novo. State v. Brooks*, 337 N.C. 132, 446 S.E.2d 579 (1994); *State v. Kincaid*, 147 N.C. App. 94, 555 S.E.2d 294 (2001); *State v. Munoz*, 141 N.C. App. 675, 541 S.E.2d 218 (2001).

The standard of review urged by defendant and the State cannot be the appropriate standard of review when the trial court's failure to make findings of fact and conclusions of law is assigned as error. We take this opportunity to clarify the appropriate standard of review.

We observe that the language of section 15A-977(f) is mandatory—a trial court "*must* set forth in the record [her] findings of fact and conclusions of law." N.C. Gen. Stat. § 15A-977(f) (2007) (emphasis added). *Compare In re Hardy*, 294 N.C. 90, 240 S.E.2d 367 (1978) (noting that, when a statute employs the word "may," it ordinarily shall be construed as permissive and not mandatory, but legislative intent must control the statute's construction) *with State v. Inman*, 174 N.C. App. 567, 621 S.E.2d 306 (2005) (observing that use of the words "must" and "shall" in a statute are deemed to indicate a legislative intent to make the provision of the statute mandatory such that failure to observe it is fatal to the validity of the action), *disc. rev. denied*, 360 N.C. 652, 638 S.E.2d 907 (2006).

The language of section 15A-977(f) has been interpreted as mandatory to the trial court "*unless* (1) the trial court provides its rationale from the bench, *and* (2) there are no material conflicts in the evidence at the suppression hearing." *State v. Williams*, 195 N.C. App. 554, 555, 673 S.E.2d 394, 395 (2009) (citing *State v. Shelly*, 181 N.C. App. 196, 204-05, 638 S.E.2d 516, 523, *disc. rev. denied*, 361 N.C. 367, 646 S.E.2d 768 (2007)) (emphasis added). "If these two criteria are met, the necessary findings of fact are implied from the denial of the motion to suppress." *Id.*[2] The North Carolina Supreme Court has

---

2. The holding of *Williams* notwithstanding, the authority upon which *Williams* relies raises a question of whether satisfaction of both criteria is a necessary condition precedent to relieving a trial court from the mandate of section 15A-977(f) to make findings

articulated its preference that a trial court make findings of fact, even when no material conflict in the evidence exists, opining that "it is always the better practice to find all facts upon which the admissibility of the evidence depends." *State v. Phillips*, 300 N.C. 678, 685, 268 S.E.2d 452, 457 (1980). A record containing findings of fact and conclusions of law will facilitate "a meaningful appellate review of the [trial court's] decision." *State v. Horner*, 310 N.C. 274, 279, 311 S.E.2d 281, 285 (1984).

In the absence of controlling authority to the contrary, and in light of the mandatory language contained in section 15A-977(f), we conclude that when a trial court's failure to make findings of fact and conclusions of law is assigned as error, the appropriate standard of review on appeal is as follows: The trial court's ruling on the motion to suppress is fully reviewable for a determination as to whether the two criteria set forth in *Williams* have been met—(1) whether the trial court provided the rationale for its ruling on the motion to suppress from the bench; and (2) whether there was a material conflict in the evidence presented at the suppression hearing. If a reviewing court concludes that both criteria are met, then the findings of fact are implied by the trial court's denial of the motion to suppress, *Williams*, 195 N.C. App. at 555, 673 S.E.2d at 395, and shall be binding on appeal if supported by competent evidence, *Leach*, 166 N.C. App. at 715, 603 S.E.2d at 834. If a reviewing court concludes that either of the criteria is not met, then a trial court's failure to make

of fact and conclusions of law. In *Williams*, this Court relied on *Shelly* as authority for the stated rule. The *Shelly* Court relied on the holdings of two other cases to identify instances in which a trial court's failure to make findings of fact was held not to constitute reversible error. Specifically, the *Shelly* Court relied on *State v. Jacobs*, 174 N.C. App. 1, 620 S.E.2d 204 (2005), as authority for the proposition that a trial court does not commit reversible error when it fails to enter written findings of fact if the trial court provided the rationale for its ruling from the bench. *State v. Shelly*, 181 N.C. App. 196, 204, 638 S.E.2d 516, 523, *disc. rev. denied*, 361 N.C. 367, 646 S.E.2d 768 (2007). The *Shelly* Court relied on *State v. Phillips*, 300 N.C. 678, 268 S.E.2d 452 (1980), as authority for the proposition that a trial court does not commit error when it admits challenged evidence without making specific findings of fact when no material conflict in the evidence exists. *Shelly*, 181 N.C. App. at 204-05, 638 S.E.2d at 523. The *Shelly* Court then concluded that both conditions had been satisfied in the case it was deciding. There is no discussion or other language appearing in *Shelly* to indicate that both conditions must be satisfied as conditions precedent to relieving a trial court of the mandate of section 15A-977(f). We conclude, however, that *Williams* controls this appeal since "a subsequent panel of the same court is bound by" the decisions of a prior panel "unless it has been overturned by a higher court." *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). Any concerns the parties may have as to controlling legal authority for this appeal, therefore, "must be addressed to the Supreme Court and the General Assembly." *Jailall v. Dept. of Public Instruction*, 196 N.C. App. 90, 91, 675 S.E.2d 79, 80, *disc. rev. and cert. denied*, —— N.C. ——, 682 S.E.2d 212 (2009).

findings of fact and conclusions of law, contrary to the mandate of section 15A-977(f), is fatal to the validity of its ruling and constitutes reversible error. *See Inman*, 174 N.C. App. at 570, 621 S.E.2d at 309 (2005), *disc. rev. denied*, 360 N.C. 652, 638 S.E.2d 907 (2006). Accordingly, because the defendant assigns error to the trial court's failure to make findings of fact and conclusions of law in connection with its ruling on defendant's motion to suppress, we must review the trial court's ruling for a determination of whether the trial court provided the rationale for its ruling from the bench and whether there was a material conflict in the evidence presented at the hearing on defendant's motion to suppress.

[2] Our analysis begins with the issue we identify as dispositive relating to defendant's first assignment of error—whether a material conflict in the evidence presented at the suppression hearing exists. The State argues that the mandate of section 15A-977(f) does not apply because there was no material conflict in the evidence presented at the hearing on defendant's motion to suppress. While the State concedes that a conflict in the evidence exists regarding defendant's location in the roadway when Officer Moseley first encountered defendant—on the side of the road versus in the middle—the State contends that a conflict of this nature does not rise to the level of a material conflict because it would not affect the ultimate question of whether the stop was reasonable. Defendant argues the trial court was not relieved from the mandate of section 15A-977(f) because a material conflict in the evidence exists relating to the length of the stop, the number of officers on the scene, the purpose of the stop, and the reasonableness of the stop based on an objective standard.

Our analysis requires that we first determine when a "material conflict in the evidence" exists. The phrase "material conflict" neither appears in the language of section 15A-977(f) nor has it been specifically interpreted by either of our appellate courts.

Turning to the cases cited by defendant and the State for guidance, we observe that no reviewing court in North Carolina has held a trial court's failure to make findings of fact and conclusions of law constituted reversible error because of a material conflict in evidence presented at the suppression hearing. *See Horner*, 310 N.C. 274, 311 S.E.2d 281; *Phillips*, 300 N.C. 678, 268 S.E.2d 452; *Williams*, 195 N.C. App. 554, 673 S.E.2d 394; *State v. Toney*, 187 N.C. App. 465, 653 S.E.2d 187 (2007); *State v. Shelly*, 181 N.C. App. 196, 204-05, 638 S.E.2d 516, 523, *disc. rev. denied*, 361 N.C. 367, 646 S.E.2d 768 (2007); *State v.*

*Jacobs,* 174 N.C. App. 1, 620 S.E.2d 204 (2005); *State v. Norman,* 100 N.C. App. 660, 397 S.E.2d 647 (1990).

Notwithstanding the lack of precedent establishing when a material conflict in evidence exists, these cases are instructive because in each of these cases, the evidence presented at the suppression hearing was unchallenged by the opposing party. For example, in *Williams,* a case with facts very similar to the case *sub judice,* the Court's conclusion that no material conflict in the evidence existed at the suppression hearing is supported by the fact that the only evidence received during the suppression hearing was offered by the State, consisting only of the testimony of Officer Nathan Smith. *Williams,* 195 N.C. App. at 555-56, 673 S.E.2d at 395. *See also Toney,* 187 N.C. App. 465, 653 S.E.2d 187 (concluding no material conflict in the evidence existed when a police officer was the only witness to testify in connection with the defendant's motion to suppress such that the trial court's failure to make findings of fact was not reversible error). It previously has been determined that a material conflict in the evidence does not arise when the record on appeal demonstrates that defense counsel cross-examined the State's witnesses at the suppression hearing. *See Jacobs,* 174 N.C. App. at 8-9, 620 S.E.2d at 209 (holding no material conflict in the evidence existed where the evidence presented during the suppression hearing consisted of the testimony of law enforcement officers who were cross-examined by defense counsel). These cases therefore, are distinguishable from the case *sub judice* because both the State and defendant presented evidence at the suppression hearing.

The fact that defendant presented evidence is not, and cannot, by itself, be dispositive of whether a material conflict in the evidence existed. In its argument that no material conflict in the evidence exists, the State urges an interpretation of "material" consistent with its legal definition: "Having some logical connection with the consequential facts; Of such a nature that knowledge of the item would affect a person's decision-making; significant; essential." Black's Law Dictionary, 1066 (9th ed. 2009). "Material," as used in a context other than section 15A-977(f), also provides guidance. For example, Rule 56(c) of the North Carolina Rules of Civil Procedure provides that a party is entitled to summary judgment if there is no "genuine issue as to any *material fact.*" N.C. Gen. Stat. § 1A-1, Rule 56(c) (2007) (emphasis added). In the context of Rule 56(c), facts are material if they are "of such nature as to affect the result of the action." *Kessing v. Mortgage Corp.,* 278 N.C. 523, 534, 180 S.E.2d 823, 830 (1971). Based

on the foregoing, we hold that, for purposes of section 15A-977(f), a material conflict in the evidence exists when evidence presented by one party controverts evidence presented by an opposing party such that the outcome of the matter to be decided is likely to be affected.

[3] Having determined what constitutes a material conflict in the evidence, we must now determine whether, at the hearing on defendant's motion to suppress, defendant presented evidence that controverts evidence presented by the State such that questions of the constitutionality of the stop and, ultimately, the suppression of evidence were likely to be affected. At issue at the hearing on defendant's motion to suppress was whether defendant was searched and seized in a manner permissible pursuant to the Fourth Amendment of the United States Constitution. Our Supreme Court has articulated factors to be considered when making a determination of whether a seizure has occurred. Those factors include "the number of officers present, whether the officer displayed a weapon, the officer's words and tone of voice, any physical contact between the officer and the individual, whether the officer retained the individual's identification or property, the location of the encounter, and whether the officer blocked the individual's path." *State v. Icard*, 363 N.C. 303, 309, 677 S.E.2d 822, 827 (2009). Accordingly, evidence by defendant that controverts the State's evidence relating to any one of these factors could create a material conflict in the evidence.

The State argues that the only conflict in the evidence relates to defendant's location in the road at the time Officer Moseley encountered defendant—the middle of the road versus side of the road—but that a conflict of this nature is not material because it is not likely to affect the ultimate question of the reasonableness of the stop. Defendant argues that a material conflict in the evidence presented at the suppression hearing exists as it pertains to the length of the stop, the purpose of the stop, defendant's location on the road, the number of officers present at the scene, and when the other officers arrived at the scene.

The record reveals that defendant did not present any evidence to controvert the length of the stop. Officer Moseley testified that approximately two to three minutes had elapsed from the time he exited his patrol vehicle to the time he commenced the pat-down search of defendant. Defendant's counsel neither cross-examined Officer Moseley regarding the length of the stop nor elicited testimony from defendant regarding the length of the stop during direct examination.

STATE v. BAKER

[208 N.C. App. 376 (2010)]

The record does reveal, however, that defendant presented evidence to controvert Officer Moseley's testimony regarding the number of officers present at the scene and when the other officers arrived. Officer Moseley testified that he and Officer Hardy arrived on the scene at approximately the same time and acknowledged that other officers arrived at the scene, but he could not remember whether the officers were present when he patted down defendant and detected the gun. Defendant testified that a total of four officers in four separate police cars were present at the time Officer Moseley asked defendant for his name, with two officers on the same side of the street as defendant and two officers on the other side of the street, with only the blue lights on Officer Moseley's car activated. Defendant further testified that, after Officer Moseley activated his blue lights, he no longer felt free to leave.

Defendant's evidence controverts the State's evidence and creates a material conflict in the evidence because it is likely to affect the outcome—the ultimate questions of the constitutionality of the encounter between Officer Moseley and defendant and whether the evidence should be suppressed. The Supreme Court of the United States has declared that a seizure occurs when "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Michigan v. Chesternut*, 486 U.S. 567, 573, 100 L. Ed. 2d 565, 571-72 (1988). Application of the "reasonable person" standard is meant to "ensure[] that the scope of Fourth Amendment protection does not vary with the state of mind of the particular individual being approached." *Id.* Defendant argues that he was seized for purposes of the Fourth Amendment when Officer Moseley activated his blue lights. The State contends that defendant was free to leave until the time the gun was found.

Both defendant and the State agree that Officer Moseley activated his blue lights at the time he first encountered defendant. Officer Moseley testified the reason he activated his blue-lights was to notify other motorists of the presence of his patrol vehicle parked "in the middle of the road partially." Officer Moseley further testified that defendant was free to leave until the time the gun was detected and that he had not done anything to impede or prevent defendant from leaving. For example, Officer Moseley testified that by positioning his patrol vehicle behind defendant he did not obstruct or impede defendant's movement. Defendant, however, testified that he did not feel free to leave once Officer Moseley activated his blue-lights because he was aware that he was the only person on the street other than the officers.

The activation of blue lights on a police vehicle has been included among factors for consideration to determine when a seizure occurs. *See State v. Williams*, 201 N.C. App. 566, 686 S.E.2d 905 (2009) (concluding no seizure occurred for purposes of the Fourth Amendment when officer did not physically block defendant's vehicle from leaving the driveway with his patrol vehicle and neither activated the siren or blue-lights).[3]

Defendant also testified that, by the time Officer Moseley asked him his name, a total of four police officers, including Officers Moseley and Hardy, were present in four separate patrol vehicles, two on his side of the street and two on the other side of the street, all four officers having arrived at or near the same time. This testimony by defendant controverts the testimony of Officer Moseley that "[o]ther officers were arriving at some point. I don't recall if they were there by the time I found the gun or not. I don't think they were."

In ruling on defendant's motion to suppress, the trial court was faced with deciding, *inter alia*, whether a seizure for purposes of the Fourth Amendment occurred and, if so, whether the seizure was properly supported by probable cause or reasonable suspicion. The record indicates the trial court's ruling on the motion to suppress consists only of the following:

> THE COURT: Your motion to suppress is denied. I find that the stop was not unreasonable. A person in defendant's position could just as well have been a person who was in distress at that time of night, and the officer would have had an obligation to make—to stop and see if this person needed help, as well as preventing possible crimes and investigating past crimes, and that the length of the stop prior to the discovery of the weapon was not unreasonable, and therefore the motion to suppress is denied.

At the hearing on defendant's motion to suppress, it was incumbent upon the trial court to determine whether a reasonable person in the position of the defendant would not have felt free to leave. *See State v. Freeman*, 307 N.C. 357, 298 S.E.2d 331 (1983). While the State presented evidence to the effect that defendant's freedom to leave had not been impeded upon or restricted and that defendant was free

---

3. *But see State v. Collins*, 198 N.C. App. 704, 681 S.E.2d 866 (2009) (unpublished) (concluding the trial court's finding of fact that "the officer activated his blue lights and initiated a seizure of the defendant and his vehicle[,]" related to the denial of defendant's motion to suppress, was binding on appeal because it was supported by competent evidence).

to leave until the time Officer Moseley detected the gun on defendant's person, defendant presented evidence to the effect that defendant did not feel free to leave when Officer Moseley activated his blue lights and, further, that he was surrounded by a total of four officers in four separate patrol vehicles.

We conclude that a material conflict in the evidence presented at the suppression hearing exists because defendant's evidence controverts the State's evidence in a manner that affected the outcome of the matter to be decided. Because a material conflict in the evidence presented at the suppression hearing exists, the trial court, by virtue of the mandate of section 15A-977(f) and our holding in *Williams*, was required to make findings of fact and conclusions of law. The mandate of section 15A-977(f) notwithstanding, we reiterate our Supreme Court's instruction that "it is always the better practice to find all facts upon which the admissibility of the evidence depends." *Phillips*, 300 N.C. at 685, 268 S.E.2d at 457. The trial court's failure to make findings of fact and conclusions of law, contrary to the mandate of section 15A-977(f), is fatal to the validity of its denial of defendant's motion to dismiss in this case.

Defendant also assigned as error the trial court's failure to suppress the fruits of an unlawful stop and search of defendant in violation of the rights guaranteed by the Constitutions of the United States and of North Carolina. Our ability to undertake meaningful review of this assignment of error is impaired as a consequence of the lack of findings of fact and conclusions of law related to defendant's first assignment of error. As our Supreme Court said in *Horner*, "[f]indings and conclusions are required in order that there may be a meaningful appellate review of the decision," 310 N.C. at 279, 311 S.E.2d at 285. Due to our inability to conduct a meaningful appellate review, and because the trial court committed reversible error related to defendant's first assignment of error, we need not address the merits of this issue.

Accordingly, we reverse and remand to the Superior Court, Halifax County, for findings of fact and conclusions of law relating to the denial of defendant's motion to suppress.

Reversed and Remanded.

Judges ELMORE and STEPHENS concur.