ELMORE, Judge.
Reberta Lynn Riggsbee ("defendant") was found by a jury to be guilty of driving while impaired but appeals from the trial court's denial of her motion to suppress evidence obtained as a result of an interrogation that she alleges violated her rights under Miranda v. Arizona , 384 U.S. 436, 16 L.Ed.2d 694 (1966). We affirm.
I. Background
On 28 December 2013 at approximately 11:30 p.m., Michael Riggsbee was in his apartment with his girlfriend, Heather Holder, when he heard defendant, his ex-wife as of March 2013, "hollering and screaming ... kicking at the door ... [and] beating on the windows." Mr. Riggsbee called the police.
When Officer J.R. Wray of the Winston-Salem Police Department arrived, he witnessed defendant, Mr. Riggsbee, and Ms. Holder involved in an ongoing physical altercation. Defendant was holding Ms. Holder by the hair. Mr. Riggsbee had his arm around defendant's neck, attempting to pry defendant off Ms. Holder. When Officer Wray approached, Mr. Riggsbee released defendant. Officer Wray instructed defendant to release Ms. Holder's hair but she refused. In an effort to unclasp her grasp, Officer Wray grabbed defendant's arms but had to "knee-spear into her leg to get her attention away from [Ms. Holder's] hair" and force defendant to the ground, where he detained her in handcuffs. Officer Wray moved defendant to the front of his patrol car, and instructed her to sit on the ground and stay there while he talked to Mr. Riggsbee and Ms. Holder. Defendant managed to get out of her handcuffs and another officer immediately recuffed her. At no time did Officer Wray tell defendant she was under arrest.
Officer Wray suspected defendant had been driving while impaired so he asked defendant how she got to the apartment and how much alcohol she had consumed that night. After defendant pointed to her car and admitted she drove and consumed "two beers and three shots" and Mr. Riggsbee confirmed that he saw defendant drive to his apartment, Officer Wray removed defendant's handcuffs in order to perform a field sobriety test. During the walk-and-turn test, defendant could not keep her balance and told Officer Wray that "she couldn't have done it sober." After defendant failed the horizontal gaze nystagmus test and the walking test, Officer Wray administered a portable breath test indicating the presence of alcohol. Defendant was arrested and taken to the Forsyth County Detention Center where she voluntarily submitted to a breath sample analysis, which registered a blood alcohol concentration of .08. Defendant was charged with two counts of simple assault and one count of driving while impaired.
In Forsyth County District Court, defendant pled guilty to the charge of driving while impaired, and the State dropped the assault charges because its witnesses were not present. Defendant was sentenced to a level II driving while impaired judgment and gave notice of appeal to Forsyth County Superior Court for trial. Defendant was tried before the Honorable Stanley Allen on the charge of driving while impaired and entered a plea of not guilty. Before trial, defendant moved to suppress statements made to Officer Wray and the results of her field sobriety test on the basis that her constitutional right to avoid self-incrimination was violated because she was interrogated while "in custody" for Miranda purposes without being advised of her constitutional rights.
At the suppression hearing, Officer Wray testified and the dash camera video from his patrol car was published. After the presentation of evidence, the trial court made oral findings and conclusions denying defendant's suppression motion. After trial, the jury found defendant guilty of driving while impaired. Defendant appeals.
II. Analysis
A. No Material Conflicts in Evidence
Defendant first contends the trial court erred by denying her motion to suppress and failing to make findings of fact and conclusions of law in violation of N.C. Gen. Stat. § 15A-977(f). We disagree.
N.C. Gen. Stat. § 15A-977(f) (2015) provides that when ruling on a motion to suppress, "the judge must set forth in the record his [or her] findings of facts and conclusions of law." "[T]he trial court [may] make these findings either orally or in writing." State v. Bartlett , 368 N.C. 309, 312, 776 S.E.2d 672, 674 (2015). However, a trial court need not make explicit factual findings "[w]hen there is no conflict in the evidence, [since] the trial court's findings can be inferred from its decision." Id. ("[O]nly a material conflict in the evidence-one that potentially affects the outcome of the suppression motion-must be resolved by explicit factual findings that show the basis for the trial court's ruling." (citations omitted)). "[A] material conflict in the evidence exists when evidence presented by one party controverts evidence presented by an opposing party such that the outcome of the matter to be decided is likely to be affected." State v. Baker, 208 N.C. App. 376, 384, 702 S.E.2d 825, 831 (2010).
Defendant moved to suppress pretrial statements to Officer Wray on the basis that she was "in custody" for Miranda purposes and had not been advised of her constitutional rights before she gave the statements. After the suppression hearing, the trial court did not enter written findings or conclusions but provided its rationale from the bench:
THE COURT: First of all, in the-in regard to the motion to suppress, the Court will find that the officer was there at the time purely for investigative purposes; that he had witnessed a partial fight between the defendant and at least two other people.
That at that time he didn't know-didn't know it was a messy incident and didn't know if he was not required to and didn't know if he was going to arrest the defendant at that time for an assault because the main fight was between him-between her-the defendant and another female.
That although he placed her in cuffs, it was purely to calm down the situation and to protect himself and others from a possible further assault; that he did not place her under arrest and did not make any other indications that she was under arrest.
That a reasonable person, including the defendant, would not have felt like she was under arrest because she actually got loose from one of the handcuffs and was waving it around.
The officer even stated to another officer that he was investigating the assault on a possible DWI and that he did not have probable cause at the time to arrest for DWI and conducted some standard field sobriety tests which is normal. Even though he may have had to ask her some investigatory questions, it was still purely investigation and did not intend to elicit any incriminating responses.
That even in his mind, he did not perceive that she was under arrest because of his continuing admonishments to her to be quiet and act her age.
That she was not in custody for Miranda purposes.
The Court will find that her-or will conclude further that her self-incrimination was not violated and that the motion to suppress is denied.
Defendant points to the following "material conflicts" in the evidence: (1) whether Officer Wray "kn[e]w if he was going to arrest ... [d]efendant at the time for an assault"; (2) whether Officer Wray "ma[d]e any other indications that [defendant] was under arrest"; and (3) whether Officer Wray kept defendant in handcuffs for public safety purposes.
First, the trial court made findings on all of these proposed material conflicts and, therefore, did not violate N.C. Gen. Stat. § 15A-977(f) by failing to do so. Second, Officer Wray's non-communicated, subjective intent is irrelevant. State v. Garcia , 358 N.C. 382, 397-98, 597 S.E.2d 724, 737 (2004) ("It is well settled that non-communicated subjective suspicions and the non-communicated subjective intent of individual officers have no bearing on Miranda analysis." (citation omitted)). Thus, defendant's first and third alleged conflicts are immaterial. See Bartlett , 368 N.C. at 312, 776 S.E.2d at 674. Third, no conflict in the evidence existed as to whether Officer Wray made "other indications" that defendant was under arrest-Officer Wray's testimony and his dash cam video were consistent and defendant presented no other conflicting evidence. See Baker, 208 N.C. App. at 384, 702 S.E.2d at 831 ("[W]e hold that, for purposes of [a motion to suppress], a material conflict in the evidence exists when evidence presented by one party controverts evidence presented by an opposing party such that the outcome of the matter to be decided is likely to be affected." (emphasis added)).
After reviewing the transcript and record, we find no unresolved material conflicts in the evidence presented and defendant has pointed to none. Therefore, the trial court did not violate N.C. Gen. Stat. § 15A-977(f), and we overrule defendant's challenge.
B. No Violation of Constitutional Rights
Defendant next contends that the trial court erred by applying the wrong legal standard when analyzing whether defendant was "in custody" for Miranda purposes. Specifically, defendant contends "the trial court's inquiry and analysis appear[ed] to be whether a reasonable person would have believed [defendant] had been arrested at the time she was questioned by Officer Wray, and not whether her freedom of movement had been restrained to such a degree associated with a formal arrest." We disagree.
1. Standard of Review
Ordinarily, "[t]he standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." State v. Jackson, 368 N.C. 75, 78, 772 S.E.2d 847, 849 (2015) (citation and internal quotation marks omitted). However, if a defendant fails to object at trial to the admission of the evidence he or she requested be suppressed, this Court is limited to reviewing for plain error. See State v. Waring , 364 N.C. 443, 467-468, 701 S.E.2d 615, 631-632 (2010) (reviewing challenges to suppression order under plain error where the defendant failed to object when the evidence was offered at trial). The plain error standard places on a defendant the heavier burden to show not just error but that the error "had a probable impact on the jury's verdict." State v. Lawrence, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citations and quotation marks omitted).
Whether an individual is in custody for purposes of Miranda is a mixed question of law and fact. Accordingly, we review the trial court's pertinent findings of fact to determine whether they are supported by competent evidence from the record, and we review whether its conclusions of law are proper and reflect a correct application of law to the facts found.
Waring , 364 N.C. at 470, 701 S.E.2d at 633 (internal citations, quotation marks, and brackets omitted).
2. In Custody for Miranda Purposes
The proper inquiry for determining whether a person is 'in custody' for purposes of Miranda is based on the totality of the circumstances, whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. The initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned. We must therefore determine whether, based upon the trial court's findings of fact, a reasonable person in defendant's position would have believed that he was under arrest or was restrained in his movement to that significant degree.
Id. (internal citations, quotation marks, and brackets omitted).
Here, the trial court made the following pertinent findings of fact and conclusions of law:
That although he placed her in cuffs, it was purely to calm down the situation and to protect himself and others from a possible further assault; that he did not place her under arrest and did not make any other indications that she was under arrest.
That a reasonable person, including the defendant, would not have felt like she was under arrest because she actually got loose from one of the handcuffs and was waving it around.
Defendant argues her freedom of movement was restrained to such a degree that a reasonable person would associate it with a formal arrest. Defendant points specifically to the evidence that (1) she was handcuffed as soon as Officer Wray arrived on the scene; (2) defendant was not free to leave because she was instructed to sit on the ground in front of Officer Wray's patrol car and when she escaped from the handcuffs, another officer recuffed her and instructed her again to sit down in front of Officer Wray's patrol car; and (3) Officer Wray stated, at such a volume that defendant might have overheard, that he intended to arrest her for assault and possibly for driving while impaired.
First, being handcuffed "support[s] an objective showing that one is 'in custody'...." State v. Buchanan , 353 N.C. 332, 339, 543 S.E.2d 823, 828 (2001). "Determining whether an individual's freedom of movement was curtailed, however, is simply the first step in the analysis, not the last. Not all restraints on freedom of movement amount to custody for purposes of Miranda. " Howes v. Fields, --- U.S. ----, ----, 182 L.Ed.2d 17, 28 (2012) ; see also State v. Barnes , --- N.C. App. ----, ----, 789 S.E.2d 488, 490 (2016) (holding that a defendant on probation was not in custody for Miranda purposes even though he was handcuffed while police officers were searching his home). Here, when Officer Wray arrived at the scene, he witnessed defendant's ongoing assault of Mr. Riggsbee and Ms. Holder. Defendant refused to let go of Ms. Holder's hair and had to be "knee-spear[ed]" to the ground. A reasonable person in defendant's situation would understand that she was being handcuffed for safety purposes due to her erratic behavior. Officer Wray then proceeded to speak with defendant and Mr. Riggsbee and Ms. Holder separately. A reasonable person would understand that Officer Wray was conducting an investigation. Officer Wray never gave any indication that her detention would not be temporary.
Second, we can discern no significant difference between being handcuffed and instructed to stand or sit on the ground in front of a patrol car in this context. Additionally, that defendant was able to escape so easily from the handcuffs initially indicates that they were not secured as tightly as one would expect during a formal arrest. That it was another officer who recuffed defendant and reinstructed her to sit and stay put, rather than Officer Wray himself, does not indicate that someone in defendant's situation would have felt they had been formally arrested. A person might reasonably believe that the other officer was just following Officer Wray's initial decision to handcuff her during the investigation.
Third, although this conversation can be heard on the dash camera video, Officer Wray later testified that it occurred out of defendant's earshot. Defendant presented no evidence at the suppression hearing suggesting that she heard Officer Wray's statement. Therefore, we overrule defendant's challenge as to this issue.
Under the totality of the circumstances, we do not find that "a reasonable person in defendant's position would have believed that [s]he was under arrest or that [her] freedom of movement was restrained to the degree of a formal arrest." Garcia, 358 N.C. at 400, 597 S.E.2d at 738-39. Therefore, the trial court properly determined that defendant was not "in custody" for Miranda purposes and properly denied her motion to suppress.
Assuming arguendo that the trial court erred in denying her motion to suppress, defendant cannot demonstrate the error rose to the level of plain error, given the overwhelming evidence supporting the jury's finding of her guilt. The evidence that defendant wished to suppress was her statements to Officer Wray that she had driven to the scene, how much she had drank, her statement that she "couldn't do this sober" during one of the field tests, and the results of her field tests.
At trial, Mr. Riggsbee testified that he witnessed defendant's vehicle, a "bright yellow Dodge Neon[,] come roaring past [him] and whoop[ ] into a no-parking zone" and then "[defendant] proceeded to get out of the driver's side of the car." He testified that after defendant parked, she left her car running and the headlights on and then "got out, [acting] very belligerent ..., a lot of screaming, cussing, spitting, [and] wanting to fight." Mr. Riggsbee stated that defendant started to come at him, "cussing, swearing, calling [him] all kinds of names, basically want[ing] to pick a fight" and that "[s]he misstepped [sic] off the sidewalk, jumped up, swore [he] pushed her, and commenced to swinging at [him]." Mr. Riggsbee testified that "[he] could smell alcohol[,] like [defendant] had been drinking a few."
Additionally, Officer Wray testified that when he arrived on the scene, he saw a yellow Dodge Neon parked in a no-parking zone, still running, with the driver's side door open and its headlights on. He further testified that he noticed defendant's speech was slurred, her pants were soaked in urine, her eyes were bloodshot and glassy, and he smelled a strong odor of alcohol originating from her breath.
Given the overwhelming evidence that defendant was intoxicated when she drove to Mr. Riggsbee's apartment, defendant cannot demonstrate that absent the admission of her statements to Officer Wray or her field sobriety test results "the jury probably would have reached a different result." Therefore, defendant has not met her burden to demonstrate plain error.
III. Conclusion
The trial court properly complied with N.C. Gen. Stat. § 15A-977(f) because there were no unresolved material conflicts in the evidence presented at the suppression hearing. Defendant has not demonstrated the trial court erred, much less plainly erred, in denying her motion to suppress. Accordingly, we affirm the trial court's denial of defendant's motion to suppress.
AFFIRMED.
Report per Rule 30(e).
Judges STEPHENS and DIETZ concur.